## SLOANE and others *v.* CHINIQUY and another.

*(Circuit Court, D. Minnesota. July 2, 1884.)*

1. CONSTITUTIONAL LAW—INSOLVENT LAW OF MINNESOTA.
   It is a well-recognized principle that, among other things, a state, if it does not thereby impair the obligation of a contract, may provide for the distribution of the property of a debtor within the limits of the state.

2. SAME—IMPAIRMENT OF THE OBLIGATION OF CONTRACTS.
   The act of March 7, 1881, (Minn. St.,) providing for the dissolving of attachment *ipso facto* by the debtor's assignment of his property, is not an act impairing the obligation of contracts.

3. SAME—SCOPE OF THE LAW—RIGHTS OF CREDITOR—FEDERAL COURTS.
   The act of March 7, 1881, (Minn. St.,) does not discharge a debt unless the party discharges himself by releasing the debtor. As long as the plaintiff in the case chooses to stay out and say, "I will not release," he has a right to take a judgment which may at some time be effectual against the defendant. In such a case there is no doubt that the United States courts have power to render a judgment.

4. SAME—CONTRACT SUBSEQUENT TO ENACTMENT.
   In a case where the contract was entered into subsequently to the enactment of the law, it cannot be held that such law impairs the obligation of the contract.

In Equity.

*O'Brien & Wilson,* for complainants.

*E. G. Rogers,* for defendants.

MILLER, Justice. The case of Sloane against Chiniquy was originally an attachment against Chiniquy, levied on his property by an order from this court. It seems that the defendant availed himself of the statute of Minnesota, which enacts that in such a case the debtor in attachment may make an assignment of all his effects, subject to execution, for the benefit of all his creditors who will execute and file releases of their claims against him, and that the assignment shall be filed in the district court of the state, and that the parties shall proceed about as in bankruptcy proceedings, dividing the property among those who should prove their debts, and release him from further liability. The bill in the present case is filed against the assignee by the original plaintiff in this court, to restrain any further proceedings under that assignment, and to declare the assignment void. The main argument in favor of declaring it void is that the statute itself is void; that the act of the legislature of the state of

Minnesota upon that subject is forbidden by the provision of the constitution of the United States that no state shall pass any law impairing the obligation of a contract; and it is argued with a great deal of force that this statute does impair the obligation of the contract, in that it requires of the creditor that he shall release all claims against the debtor *in personam* upon the filing of this assignment, when he shall be permitted to share equally with all creditors who have filed such releases. Undoubtedly, such a statute as that, and this statute, is void as against all creditors who were such before its passage, because it does impair the obligation of the contract as it existed at the time the contract was made. Before the law was passed, it was a part of the right of the creditor to attach the property of the debtor under certain circumstances, and to hold it for the payment of the debt; and, apart from an attachment, he had a right to procure an ordinary judgment at law, and to levy upon the property of his debtor. So that, as to all debts arising on contract made before the passage of this statute, the law is inoperative and void as to them, because it impairs the obligation of the contract. But the principle has long been settled that state laws concerning the enforcement of contracts by judicial proceedings, which were in force at the time the contract is made, constitute a part of the contract, and for that reason cannot be said to impair its obligation. These laws enter into the contract the same as if they were written in it, and are necessarily a part of it, if the contract was made at the time they were in existence. In this case the parties made this contract with reference to this statute, and with the knowledge of the fact that it was in operation. Therefore, when the goods were sold for which this attachment process was issued, the statute was binding, and that act of the Minnesota legislature of 1881 was a part of the contract, and the man who sold these goods knew it, or ought to have known it, and knew that in case he proceeded so far as to make this claim a subject of judicial enforcement, that this law would govern the procedure. He knew when he sold the goods that if he sued this man and issued an attachment, and levied upon his property, that the debtor might make an assignment for the benefit of all his creditors who would release him; that he might turn over all his property under those circumstances; that if he chose to release him he could get his share of the property, and that if he did not choose to release him, he could stand upon his legal obligation and enforce his claim against him whenever he might be able to do so. Therefore, as far as the law is assailed as being opposed to the constitution of the United States, in that it impairs the obligation of the contract, the bill cannot be sustained.

It is urged that this is a state insolvent law, and that by many decisions of the federal courts such insolvent laws are inapplicable to contracts made outside of the state where the law is to be enforced, and does not bind a party living outside of the state. The decisions to this effect are not to be controverted. But they are limited to the

discharge of the debtor. No state insolvent law, as has been repeatedly decided, can discharge or release the debtor from his obligation to pay, under that contract, where the creditor is a citizen of another state, because the law cannot operate upon a citizen not within its jurisdiction. The theory of that is that the judgment of a court discharging a debtor from his obligations is, as to the creditor residing in another state, an *ex parte* judgment; but if he comes within the state and submits himself to the jurisdiction of the court, it has never been held that the contract may not be discharged. Now, in the case of this statute, the law does not authorize the discharge of the debtor. It requires the plaintiff, as a condition of participation in the assets of the insolvent debtor, that he shall release the personal obligation of the debtor, otherwise he cannot participate in the assets. But there is no attempt by the decree, or by the statute, absolutely to release the creditor's claim, or to discharge the debtor, without his consent. That is the extent of the decision in the case of *Sturges* v. *Crowninshield*, 4 Wheat. 122, as to the inefficacy of a state statute and of a state judgment on the contract of a party not within the jurisdiction of the courts of the state. But the *property* of this insolvent debtor is within the state. The state has a right to pass laws concerning its liability for the payment of his debts, provided they do not impair the obligation of the contract. As I said before, the statute did not impair the obligation of the contract, if the law is in existence when the contract is made. In the present case, the law having been enacted before the contract was entered into, and therefore being part of the contract, and not being subject to the objection that it impaired its obligation, the property of the debtor can be distributed according to the laws provided by the state legislature, in the absence of a federal national bankruptcy act. This is no new doctrine, although it may seem, in some instances, to be kind of a hardship; yet I think it is doubtful whether there is any hardship in requiring a man who issues an attachment and seizes property to divide it among all the creditors. Certainly, in some of the states in which I hold courts, there is a provision that, whenever a creditor issues an attachment, and seizes the property of the debtor, this property is held subject to the claims of all the creditors that come in and prove their claims under that attachment process.

It is a well-recognized principle, among other things, that a state, if it does not impair the obligation of a contract, may provide for the distribution of the property of a debtor within the limits of the state. It is a very common thing in a good many of the states, and it is according to the common law, apart from any statute, in the administration of a dead man's estate, that all the creditors of that man living within the state should be paid before a dollar of this money be sent to a foreign administration. That is the principle so far as an insolvent corporation in one state is being pursued with regard to its assets in another state. We have been troubled in the states of my

circuit with a number of insurance companies in Chicago who were broken up by the Chicago fire. In one of the cases a receiver was appointed, and he was sent all over this country to collect obligations of men who had subscribed for stock, and become members of a mutual insurance company, or something of that kind, and were therefore under obligations to this insolvent company. There was great trouble about the extent of the power of a receiver appointed in Chicago exercising its functions in other states; and I have had several of such cases before me. But perhaps the most pertinent case was decided by Judge Shiras, of the Northern district of Iowa, that although we might permit a receiver appointed in Chicago for one of these insolvent insurance companies to pursue and collect debts in Iowa by virtue of his appointment in his state, it was clear doctrine that he could not withdraw debts due to that institution in the state of Iowa from the claims of the creditors of that institution in the state of Iowa. It is the law, undoubtedly, in almost every other state in the Union, that in case of an insolvent creditor, whether a corporation or an individual, it seeks to secure its own creditors before it permits funds to be taken to pay their foreign creditors. This principle is in analogy to that asserted here. It is not that this statute intends to defeat any of the creditors, but that it exercises the same power in determining where the assets of a debtor or of a corporation shall go,—how they shall be distributed. It is the same principle that authorizes a man to make a preferential assignment; and in the absence of any statute a man may give everything to one creditor, and leave the others out. On the other hand, a state may provide and many states have enacted statutes that abolish the principle of the common law, and declare that he shall make no general assignment, except for the benefit of all his creditors. The statutes of Minnesota have adopted the latter principle, with the exception that it shall go to all those creditors who are willing to release the debtor. Of the validity of this statute both Judge Nelson and myself are perfectly satisfied.

A question was discussed, which is not before us, but about which I will express no opinion, which was decided by the supreme court of this state, that however fraudulent the purposes of the assignor may have been, or however he may have designed to conceal his property, no attempt at impeachment of the assignment can be made, because whether it is a good or bad assignment, it puts the matter into the hands of the court for administration, and when it gets into court it will administer the property as it ought to, notwithstanding any fraud or concealment that there might have been in the instrument of assignment. On that subject I desire to express no opinion, because it is not in this case. There is an allegation in the bill of some defect in that respect, but that is denied, and there is no proof properly before us that it was not a fair and honest assignment.

The bill, therefore, to set aside the assignment is dismissed.

There is another case that was submitted at the same time, and I think on a little different principle, where under a writ of attachment the assignee was served with garnishee process, and required to answer. He moves to dismiss the case because of this assignment. I do not know that it is very material whether that question should be decided on the motion to dismiss, or whether he should be required to answer, setting up the assignment. I am inclined to think that the better course would be, when he comes into court to make this answer, to set up the assignment as a discharge, and if there is any defect in the assignment, set up what is called a disclosure: it can be there contested.

There is another question that comes up by the case before us: whether the circuit court of the United States should discharge this attachment, or whether it should go on and render a judgment. There is no question but that it has power to render a judgment, because the statute does not discharge a debt unless the party discharges it himself by means of releasing the debtor. As long as the plaintiff in the case chooses to stay out, and say, "I will not release," he has a right to take a judgment which may at some time be effectual against the defendant.

There may be another question in case no creditor, or only two or three of them, release under the assignment, and a fund is left in the hands of the assignee. The supreme court of this state have held that such a fund may be arrested when proper proceedings are had before it goes to the debtor. I don't know exactly what order should be appropriately made to keep this plaintiff in a condition to seize that fund. Certainly, he has a right to go as far as a judgment; but whether that court can make any other order, conditioned upon which it turns over the property to the assignee, or not, I am not prepared to say. That is a matter for future consideration.

The bill in this case is dismissed, and the motion to discharge the garnishee in the other case is overruled.