Second Ward Savings Bank of Milwaukee vs. Schranck.

SECOND WARD SAVINGS BANK OF MILWAUKEE, WISCONSIN, Appellant, vs. SCHRANCK, Assignee, Respondent.

SAME, Respondent, vs. SAME, Appellant.

SCHRANCK, Assignee, Respondent, vs. SECOND WARD SAVINGS BANK OF MILWAUKEE, WISCONSIN, Appellant.

*September 30 — October 22, 1897.*

*Constitutional law: Act·impairing contracts: Voluntary assignments: Judgments confessed by authority of warrants of attorney: Appeal: Costs.*

1. Notwithstanding the provision of sec. 1693*a*, S. & B. Ann. Stats., that an execution levy made under a judgment confessed against an insolvent debtor within sixty days prior to an assignment for the benefit of creditors, or a judgment entered on a promissory note by such debtor within that period, shall be void, an execution levy made under a judgment entered within sixty days prior to such assignment, on a judgment note given by the assignor more than sixty days prior to the assignment, is not void. CASSODAY, C. J., dissents.

2. The power given by warrant of attorney to enter judgment on a promissory note when due adds value thereto, and to destroy it would be a violation of the contract rights of the holder. The provision of ch. 334, Laws of 1897 (amending ch. 80 of the Revised Statutes of 1878, relating to voluntary assignments), that an insolvent debtor whose property is levied on by virtue of any process in favor of a creditor may, within ten days thereafter, make an assignment for the equal benefit of all his creditors, whereupon such levy shall be dissolved and the property taken be turned over to the assignee, if applied to levies under judgments entered upon judgment notes made more than sixty days before a voluntary assignment, by virtue of accompanying warrants of attorney, though entered within such sixty days, impairs the validity, force, and effect of contracts, and is therefore void. CASSODAY, C. J., dissents.

3. A statute which, though in terms acting on the remedy alone, in effect substantially impairs the obligation of a contract, is as void as though it acted directly on the contract itself.

4. The supervision which courts exercise over judgments entered by warrants of attorney is of an equitable character, and such a judg-

ment will not be set aside merely because costs were included therein, if they were reasonable in amount.

5. The error, if any, in taxing costs in a judgment entered by warrant of attorney was cured by the plaintiff's remitting the objectionable amount six days after the entry of the judgment.

APPEALS from an order of the superior court of Milwaukee county: GEO. E. SUTHERLAND, Judge. *Reversed on plaintiff's appeal; affirmed on that of the assignee.*

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

On the 4th of May, 1897, the plaintiff bank caused to be entered in the superior court of Milwaukee county a judgment by confession upon a certain promissory note, dated August 15, 1896, in and by which Louis Henes, Jr., promised to pay to the plaintiff or order $24,000 in thirty days from date, with interest at six per cent. from the date thereof, and claiming that $24,078.90, for principal and interest, was due thereon. Costs were included in the entry of the judgment, to the amount of $32.20, $25 whereof was for attorney's fees, as costs by statute. Execution was issued upon said judgment, and on the 4th day of May, 1897, the sheriff of Milwaukee county levied upon certain personal property of the defendant Henes, of the value of about $10,000; and it was made to appear that he still retained the custody thereof, and claimed the right to sell the same, by virtue of said execution.

An order was granted, upon the record, documents, etc., in the action, that plaintiff, together with the sheriff of Milwaukee county, show cause, etc., on the 29th day of May, before said court, at the court house, etc., why the judgment in said action, and the execution issued thereunder, should not both be vacated and set aside, and the levy made thereunder dissolved. The order was also based upon the affidavit of *Henry C. Schranck,* from which it appeared that on the 10th day of May (six days after the entry of said

judgment and levy) the defendant Louis Henes, Jr., made to said *Schranck* a voluntary assignment of all his property and estate not exempt by law, pursuant to ch. 80, R. S. Wis., and acts amendatory thereof; that said *Schranck* qualified as such assignee, and was then acting as such; that long prior to the entry of said judgment said defendant was, and ever since had been, insolvent; and that on the 10th day of May, 1897, after the making of such voluntary assignment, and after deponent had duly qualified, he demanded of such sheriff, in writing, the possession of the property so levied on, but that said sheriff and said plaintiff refused, and has ever since refused, to deliver up the same to him as such assignee; that said sheriff proposed to offer for sale and sell the said property on or before Wednesday, the 26th day of May, 1897; that the majority of the creditors of said assignee were nonresidents of the state of Wisconsin; that they were interested in said property, and any sale that might be had thereof, and that the best interest of all such creditors would be promoted, and better bids would probably be procured, provided said sale was postponed for a reasonable time; that, as appeared from the judgment roll in the action, the costs therein were taxed at the sum of $32.20, and allowed, upon the consent of the defendant's attorney, as set forth in his answer; that said costs so taxed and allowed at said sum included an item designated, " Costs by statute $25," which the defendant alleged to be grossly excessive, and to have been included without the authority or consent of the defendant, and in fraud of his rights and the rights of creditors; that, as deponent was informed and believed, the note upon which the judgment was rendered was from time to time renewed, and the time of payment thereof extended, by agreement between the parties to said action, and the last renewal or extension thereof was made April 14, 1897, for a period of thirty days; and that the principal of said note was not due

or payable until after the judgment was entered. The plaintiff afterwards, on the 4th of May, remitted said item of $25 so taxed and included in the judgment, and notified such assignee thereof.

Upon the hearing of this motion the court ordered " that by reason of the voluntary assignment by said defendant, made on the 10th day of May, 1897, and within ten days after the property of said defendant was levied upon under the execution issued herein on the 4th day of May, 1897, said levy became, and is hereby declared to be, dissolved, and the said sheriff is hereby directed to forthwith turn over to said assignee, all and singular, the property levied upon by him under said execution, and that the motion of said assignee, in so far as it seeks to dissolve said levy, be, and the same is hereby, granted." It was further ordered " that said judgment and execution issued thereunder be not vacated nor set aside, but that the same stand, and that the motion of said assignee to vacate or set aside said judgment and execution be denied." The plaintiff appealed from that portion of the order directing the sheriff of Milwaukee county to turn over to the assignee of the defendant herein property levied upon under the execution issued upon said judgment, and declaring said levy to be vacated. The said *Henry C. Schranck*, as assignee, etc., appealed from that part of the order of the superior court which denied his motion to vacate and set aside the judgment therein, and the execution issued thereon.

On the 18th day of May, 1897, *Henry C. Schranck*, as assignee of Louis Henes, Jr., obtained an order from the circuit court for Milwaukee county, in the matter of the assignment of said Louis Henes, Jr., requiring the plaintiff in said judgment, the *Second Ward Savings Bank*, and the sheriff of Milwaukee county, to show cause before said circuit court, at, etc., why they, and each of them, should not be required to deliver and turn over to *Henry C. Schranck*, as assignee of Louis Henes, Jr., the property and assets levied

upon by said sheriff of Milwaukee county under two certain executions issued upon judgments of the superior court of Milwaukee county in favor of said *Second Ward Savings Bank* against Louis Henes, Jr., and for such other or further order or relief, etc.    This order was based upon the petition of said *Henry C. Schranck*, assignee, stating the execution and delivery to him by said Louis Henes, Jr., of the voluntary assignment of all his property and estate for the benefit of his creditors on May 10, 1897, and that he thereupon duly qualified as such assignee, and had ever since acted and was then acting as such.

The petition further alleged that the assignor, at the time of the assignment, and for many years prior thereto, had been engaged in the business of a wholesale and retail dealer in coal and wood in said city, and that on or about August 15, 1896, said assignor executed and delivered to the *Second Ward Savings Bank* his promissory note for $24,000 dated that day, and due thirty days after date, together with a warrant of attorney thereto annexed, in the usual form, authorizing the confession of judgment thereon; that on or about November 21, 1896, said assignor executed and delivered to said *Second Ward Savings Bank* his certain other promissory note for $2,000, with warrant of attorney to confess judgment thereon thereto annexed, in the usual form, payable sixty days after date.    The petition further stated that upon the 6th of May, 1897, three days prior to the execution and delivery of said assignment, the *Second Ward Savings Bank* caused judgment to be entered in the superior court by confession upon said judgment notes as follows, namely, a certain judgment for $24,111.10, damages and costs, and a certain other judgment for the sum of $1,036.53, damages and costs, and that on said 6th day of May, 1897, executions issued on said judgments were delivered to F. G. Isenring, sheriff of Milwaukee county, who on that day levied upon, all and singular, the property of the said assignor,

and ever since had and retained the custody of, and claimed
the right to sell, the same, by virtue of said execution.

It was further stated in said petition that at the time of
the execution of said assignment, and the time of the enter-
ing and docketing of the said judgments, said Louis Henes,
Jr., was insolvent, and that it appeared from his books and
papers in the possession of the petitioner, and from state-
ments made by him to petitioner, that said assignor on the
6th day of May, 1897, owed debts to the amount of about
$57,000, and that according to the best knowledge, informa-
tion, and belief of petitioner the assets of said assignor con-
sisted of the divers items therein stated of the cash value of
not to exceed $10,000; that at the time of the execution and
delivery of the said judgment notes said Louis Henes, Jr.,
was insolvent, and that at the time of the receipt of said
judgment notes by said *Second Ward Savings Bank* it knew,
or had reasonable cause to believe, said assignor to be in-
solvent; and that at the time of the execution and delivery
of said assignment, and of the entry of the aforesaid judg-
ments, said assignor was insolvent. It alleged demand by
the assignee of the sheriff for possession of, all and singular,
the property of the assignor so levied on, under and pursuant
to the provisions of ch. 334, Laws of 1897, but that the said
sheriff and the said *Second Ward Savings Bank* refused, and
still did refuse, to deliver up possession thereof to petitioner.
And the petitioner prayed the order of the court in the
premises, requiring said sheriff to deliver and turn over to
him, as such assignee, all and singular, the property levied
upon by him as aforesaid, under and pursuant to the stat-
utes in such case made and provided.

An affidavit was read at the hearing, made by one Charles
C. Schmidt, one of the general officers of the *Second Ward
Savings Bank*, a judgment creditor, to the effect that he was
and had been cashier of such bank for many years, and, as
such officer, personally conducted the transactions mentioned

in the affidavit and order to show cause, and knew all the circumstances connected with and surrounding the same; that the judgments mentioned and order to show cause were entered and docketed, and the executions issued and delivered to the sheriff of Milwaukee county, and the levies and seizures thereon were made, on the 4th day of May, 1897, and not on the 6th day of May, 1897, as alleged in said affidavit; and further, that, at the time, of the receipt of the judgment notes by the bank from said assignor, the said bank did not know, nor did affiant or any of the other officers of said bank, nor did they or either or any of them, have any cause to believe, that the assignor herein was insolvent; and that the bank accepted and received both of said judgment notes from the assignor on the dates mentioned in the affidavit, in good faith and for a valuable consideration.

Upon the hearing, on motion by the attorneys for each and all of said parties, it was ordered that said circuit court assume and take jurisdiction of the matters set forth in said petition and order, and of the parties appearing therein. And it was ordered that the prayer of said petition be and was thereby granted, and that by reason of said voluntary assignment the levies set forth in said petition be, and they were thereby, dissolved; and said sheriff was directed to forthwith turn over to said assignee, all and singular, the property levied upon by him under the executions.

From said order the said *Second Ward Savings Bank* appealed.

For the bank there were briefs by *Howard & Mallory*, and oral argument by *R. B. Mallory*.

For the assignee there were briefs by *Van Dyke & Van Dyke & Carter*, and a separate brief by *Sylvester, Scheiber & Orth*, attorneys, and *W. D. Van Dyke*, of counsel, and the cause was argued orally by *W. D. Van Dyke* and *Fred Scheiber*. They argued, among other things, that ch. 334,

Laws of 1897, merely operated to limit or suspend an exe-·cution levy during the reasonable time of ten days, and .affected the remedy only. Freeman, Executions, § 34; *John-son v. Fletcher* (Miss.), 28 Am. Rep. 388; *Wendell v. Lebon*, ·30 Minn. 234; *Von Baumbach v. Bade*, 9 Wis. 559–579. The ·legislature may abolish a part of a remedy or one of two remedies. *Mason v. Haile*, 12 Wheat. 370; *Beers v. Haughton*, 9 Pet. 359; *Butz v. Muscatine*, 8 Wall. 575. It may limit or extend the time within which a remedy may be ex-ercised, for a definite and reasonable period. That the sub-stituted remedy is less beneficial does not make the change unconstitutional. *Bronson v. Kinzie*, 1 How. 311; *Curtis v. Whitney*, 13 Wall. 68; *Streubel v. M. & M. R. Co.* 12 Wis. 67–80.

PINNEY, J.   Except as to a matter of costs in the entry ·of the largest judgment against Louis Henes, the question involved in these appeals is whether ch. 334, Laws of 1897, as applied to the facts stated, is unconstitutional, as impair-ing the obligation of the contracts contained in the notes and warrants of attorney upon which the judgments above ·set forth were entered; the assignee claiming that this stat-ute is a permitted change of the existing remedy, while the plaintiff bank claims that the statute is a law impairing the obligation of these contracts, and its substantial rights under ·them, and therefore void, under the provisions of the con-stitutions of the state and of the United States prohibiting the passage of any law impairing the obligation of contracts.

1. The act in question took effect April 30, 1897, and is "An .act to amend chapter 80, of the revised statutes of the state of Wisconsin for the year 1878, entitled, 'Of voluntary as-signments.'" It provides that "whenever the property of an *insolvent* debtor is attached or levied upon by virtue of any process in favor of a creditor, or a garnishment is made :against such a debtor, such debtor may, within ten days

thereafter, make an assignment of all his property and estate not exempt by law, for the equal benefit of all his creditors, as provided by law, whereupon all such attachments, levies, garnishments, or other process *shall be dissolved* and the property attached or levied upon shall be turned over to such assignee or receiver." The act is a general one, and is an amendment to and a part of the voluntary assignment law of the state, which, taken in connection with the act providing for the discharge of a debtor (Laws of 1889, ch. 385), is, in substance and effect, an insolvent or bankrupt law, and as such permitted, in the absence of federal legislation. The notes and warrants of attorney had been given more than sixty days before the passage of the act. The remedy given to the plaintiff at the time these contracts were made was to enter judgment pursuant to the warrants of attorney, issue execution thereon, and levy the same upon the property of the debtor and sell it to satisfy the debt. This right, at the time the notes and warrants of attorney were given, could not be taken away by the making of a voluntary assignment by the debtor, if the notes and warrants of attorney upon which the judgment was entered had been given more than sixty days prior to the making of such assignment, even though the maker was insolvent at the time they were given and when the judgment was entered. *McCaul v. Thayer,* 70 Wis. 138. Sec. 1693a, S. & B. Ann. Stats., provides that "every execution levy made under a judgment confessed against any such insolvent debtor, within sixty days prior to any assignment for the benefit of creditors, or under a judgment entered on a judgment note, by any such debtor, within sixty days prior to any such assignment, and the lien of any such judgment upon real estate, shall. be void and of no effect."

In *McCaul v. Thayer, supra,* this section was before the court for consideration; and it was held that an execution levy made under a judgment entered within sixty days prior ·

to an assignment for the benefit of creditors, upon a judgment note given by the assignor *more than sixty days prior to such assignment,* was not void. The court, by ORTON, J., said that the only mischiefs to be cured by the act were acts of the debtor by which he preferred creditors, and prevented "the equal distribution of his property among all of his creditors," and that the entry of judgment at the instance of the plaintiff or creditor alone, "upon a judgment note given," was in no sense his act at the time of such entry. "He is entirely passive. He can do nothing to aid it or to prevent it. He has given a power of attorney, which is *irrevocable* because coupled with an interest. The entry of judgment on such a note by the creditor is not one of the evils or within the mischief to be cured, or named in the title, or within the purview of the law." "The rights of the parties had become fixed by the giving of such a note when it was lawful and could not possibly change the condition of the debtor as to his creditors, or prevent the equal distribution of his property among them. The entry of judgment is a mere legal consequence of the giving of the judgment note. It is not a new act by the debtor, but a natural and legal result, beyond his control. The judgment, so to speak, *is embodied within the note, and a necessary part and essential element of it,* and the note changes its form into a judgment of record, under the statute." And, further commenting upon such securities, he said: "A judgment note is a security, and a valuable one, to the holder, and it is so recited in the power of attorney. This method of business has grown into the very necessities of our business of banking, merchandising, commerce, and of buying and selling in all forms, and of exchange. It is the most common as well as the most valuable method of security in connection with commercial paper, and to destroy or discredit it would derange and unsettle the business of the country, and seriously affect the public interests." The contention that the debtor

could prevent the entry of judgment indirectly, by making an assignment, was combated, as not within the intention of the legislature, as it would work *a violation of the contract rights* of such a creditor. It was further laid down that the power of attorney to enter judgment upon the note when due, and which gave the note the name and character of a judgment note, added value thereto in the market, as well as intrinsically, " and that value neither the debtor *nor the legislature* has any right to lessen by prohibiting its use in entering judgment, by any pretext of technical or legal fraud; " and it was there held that the second clause of sec. 2, ch. 349, Laws of 1883, should be construed as if it read, "or under a judgment entered on a judgment note made by any such debtor within sixty days prior to any such assignment." Under the decision in *McCaul v. Thayer*, 70 Wis. 138, judgment notes were thus placed upon a basis by which they were greatly increased in value, and a much more extended use was made of them by merchants, bankers, and business men, as securities.

The remedy given to the plaintiff by the law in force at the time these notes and warrants of attorney were given, and which entered into and formed a part of the contracts, and made them particularly valuable, was to enter judgment, issue execution, and levy upon the property of the debtor, and sell the same to satisfy the debt. The debtor could not defeat it by revoking the warrant of attorney. The notes and warrants of attorney were potentially judgments upon which an execution could be speedily issued and levied. They were substantially preferences legally and properly acquired by the plaintiff over all other creditors of the defendant. The time within which they might be questioned by the assignee of the maker, under his voluntary assignment for the benefit of his creditors, had expired, and the preferences had *become absolute*, before the act of 1897 became operative. The effect of the statute upon these con-

tracts, according to its terms, was to enable the debtor (assignor) to revoke the remedy thus given, and to render these securities as a means of reaching and selling his property to satisfy the judgments thereon of no value whatever. It authorized and empowered the debtor, *at his option*, to withdraw his property from a levy for that purpose, and defeat the remedy which made them especially valuable; and, if the contention of the assignee is maintained, the remedy secured by these contracts might thus be utterly defeated at the option of the assignor. The orders appealed from, pursuant to the statute, dissolved the levy made, and rescued the property from the hands of the sheriff and the creditor thus rightfully pursuing it, to work out the remedy secured to him by the law of the contracts.

It is contended in support of the act that it is a part of the state system of insolvency or bankruptcy, and that it is legislation which relates to the remedy, and so within the constitutional competency of the legislature. In *Edwards v. Kearzey*, 96 U. S. 600, it was said: "The obligation of a contract includes everything within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence. Without it, the contract, as such, in the view of the law, ceases to be, and falls into the class of those 'imperfect obligations,' as they are termed, which depend for their fulfillment upon the will and conscience of those upon whom they rest. The ideas of right and remedy are inseparable. 'Want of right and want of remedy are the same thing.' . . . 'A statute providing that a previous contract of indebtment may be extinguished by a process of bankruptcy would involve its discharge, and a statute forbidding the sale of any of the debtor's property under a judgment upon such a contract would relate to the remedy.' It cannot be doubted, either upon principle or authority, that each of such laws would violate the obligation of the contract, and the last not

less than the first. These propositions seem to us too clear to require discussion. It is also the settled doctrine of this court that the laws which subsist at the time and place of making a contract enter into and form a part of it, as if they were expressly referred to, or incorporated in its terms. This rule embraces alike those which affect its validity, construction, discharge, and enforcement."

In *Green v. Biddle,* 8 Wheat. 1, the court said: "It is no answer that the acts of Kentucky now in question are regulations of the remedy, and not of the right to the lands. If these acts so change the nature and extent of existing remedies as materially to impair the rights and interests of the owner, they are just as much a violation of the compact as if they overturned his rights and interests." And it was further said that: "Whatever belongs to the remedy may be altered according to the will of the state, provided the alteration *does not impair* the obligation of a contract; but, if that effect is produced, it is immaterial whether it is done by acting on the remedy, or directly on the contract itself. In either case it is prohibited by the constitution,"— and that the test as to whether a contract has been impaired is whether its value has, by legislation, been diminished. It is not, by the constitution, to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation,— dispensing with any part of its force. *Planters' Bank v. Sharp,* 6 How. 301. In *Antoni v. Greenhow,* 107 U. S. 769, it was said: "It is competent for the states to change the form of the remedy, or to modify it otherwise as they may see fit, *provided no* substantial right secured by the contract *is thereby impaired. . . .* Whenever the result last mentioned is produced, the act is within the prohibition of the constitution, and to that extent void."

In *Brine v. Insurance Co.* 96 U. S. 627–637, it was held, through Mr. Justice MILLER, that: "All laws of a state, ex-

Wis.]                    AUGUST TERM, 1897.                    263

Second Ward Savings Bank of Milwaukee vs. Schranck.

isting at the time a mortgage or any other contract is made
which affect the rights of the parties to the contract, enter
into and become a part of it, and are obligatory on all courts
which assume to give a remedy on such contracts;" that the
construction, validity, and effect of contracts "are governed
by the place where they are made and are to be performed.
. . . It is therefore said that these laws enter into, and
become a part of, the contract. There is no doubt that a
distinction has been drawn, or attempted to be drawn, be-
tween such laws as regulate the rights of the parties, and
such as apply only to the remedy. It may be conceded that
in some cases such a distinction exists. In the recent case
of *Tennessee v. Sneed*, 96 U. S. 69, we held that, so long as
there remained a sufficient remedy on the contract, an act
of the legislature changing the form of the remedy did not
impair the obligation of the contract. But this doctrine was
said to be subject to the limitation that there remained a
remedy which was complete, and which secured all the sub-
stantial rights of the party. At all events, the decisions of
this court are numerous that the laws which prescribe the
mode of enforcing a contract, which are in existence when
it is made, are so far a part of the contract that no changes
in these laws which seriously interfere with that enforce-
ment are valid, because they impair its obligation, within
the meaning of the constitution of the United States. *Ed-
wards v. Kearzey*, 96 U. S. 595." And the learned justice,
enforcing his argument, quoted from the opinion of Chief
Justice TANEY in the case of *Bronson v. Kinzie*, 1 How. 316,
as follows: "Whatever belongs merely to the remedy may
be altered according to the will of the state, provided the
alteration does not *impair* the obligation of contracts; but,
if that effect is produced, it is immaterial whether it is done
by acting on the remedy, or directly on the contract itself.
In either case it is prohibited by the constitution." And
further: "It is manifest that the obligation of the con-

tract, and the rights of a party under it, may, in effect, be destroyed by denying the remedy altogether, or may be seriously impaired *by burdening the proceedings with new conditions and restrictions, so as to make the remedy hardly worth pursuing.* And no one, we presume, would say that there is any substantial difference between a retrospective law declaring a particular contract or class of contracts to be abrogated and void, and one which took away all remedy to enforce them, or incumbered it with conditions that rendered it useless or impracticable to pursue it."

In *Denny v. Bennett*, 128 U. S. 497, quoting the language of the court in *Gilman v. Lockwood*, 4 Wall. 409, it was said that "state legislatures may pass insolvent laws, provided there be no act of congress establishing a uniform system of bankruptcy conflicting with their provisions, and provided that the law itself be so framed that it *does not impair* the obligation of contracts." The whole subject of legislation in violation of these constitutional provisions is elaborately considered in the recent case of *Barnitz v. Beverly*, 163 U. S. 118, in which it is laid down that: "The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made. These are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other. There can be no other standard by which to ascertain the extent of either than that which the terms of the contract indicate, according to their settled legal meaning. When it becomes consummated the law defines the duty and the right, compels one party to perform the thing contracted for, and gives the other a right to enforce the performance by the remedies then in force. If any subsequent law affects to diminish the duty or to impair the right, it necessarily bears on the obligation of the contract, in favor of one party, to the injury of the other; hence any law

which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the constitution. And it is obvious it can make no difference as to the character of the law, whether it be an insolvent law, or a law upon any other subject, having the effect indicated." *Denny v. Bennett, supra.*

The extent of the power of the legislature over remedies was fully considered and discussed in the case of *Von Baumbach v. Bade*, 9 Wis. 559, and cases cited; and the result was reached that the legislature possesses the power of changing or modifying laws governing proceedings in courts of justice, in respect to past as well as future contracts, and this power is unrestricted, except that a substantial remedy must be afforded according to the course of justice as it existed at the time the contract was made. *Hasbrouck v. Shipman*, 16 Wis. 296. The doctrine of the case of *Edwards v. Kearzey*, 96 U. S. 595,— that the remedy subsisting in a state when and where a contract is made and is to be performed is a part of the obligation,— is now universal; and any legislation, though acting merely upon the remedy, that substantially impairs or lessens the value of the contract, is forbidden by the constitution, and therefore void. *People ex rel. Reynolds v. Common Council of Buffalo*, 140 N. Y. 307.

The situation when the judgments were entered was this: The maker of the notes and warrants of attorney had become insolvent. The creditor bank invoked the remedy existing when the contracts were made, which entered into and formed a part of them, and made them valuable securities, by which they had become valid preferences. The law authorizing the entry of judgment on them, and immediate execution and levy thereof upon the debtor's property, had not been withdrawn. Judgments were entered, and levy was made accordingly upon a sufficient amount, it would seem, to pay a considerable part of the debt. The debtor

Second Ward Savings Bank of Milwaukee vs. Schranck.

hereupon elected to make, and did make, a voluntary assignment for the benefit of his creditors. By virtue of the assignment and the operation of the act in question, the creditor is deprived of the benefit of his lawful remedy, which we think was an essential part of the contracts or securities. By the subsequent action of the courts, executing the statute, the fruit of such lawful remedy, out of which to satisfy its debt, has been wholly wrested from its grasp, and turned over to the debtor's assignee for equal distribution among all his creditors, so that the amount which the creditor bank will probably receive from such property will be but a trifling sum. The remedy, therefore, which entered into and formed an important part of the contracts evidenced by the notes and warrants of attorney, within the meaning and effect of the decisions referred to, is practically abrogated and taken away. Conceding that the legislation in question belongs to the class known as remedial, it is still evident that the value of these contracts was materially lessened by and through its operation, and their validity and binding force were impaired. It is needless to add that legislation having such an operation or effect upon prior contracts cannot be justified or sustained because it relates to or is amendatory of state legislation on the subject of insolvency or bankruptcy. Existing contracts may be impaired by such legislation as well as by any other. We hold, therefore, that the provisions of the act in question as applicable to notes and warrants of attorney, and judgments and executions to enforce the same, given more than sixty days before a subsequent assignment for the benefit of creditors, impair the validity, force, and effect of such contracts, and are therefore void.

2. It was argued that the larger judgment should be set aside because costs were included in it; that the proceeding was a special proceeding under the statute, upon which, by law, no costs could be allowed. It is sufficient, upon this

Second Ward Savings Bank of Milwaukee vs. Schranck.

point, to notice that by the warrant of attorney the defendant expressly stipulated for the entry of "judgment with costs." The supervision which courts exercise over judgments entered, as these were, upon warrants of attorney, is of an equitable character; and, as the costs were certainly reasonable in amount, the case does not present any equity or merit which should incline the court to vacate or set aside the judgment on that ground. Six days after the entry of the judgment the plaintiff bank remitted the item of "$25 by statute," taxed and included in the judgment, and declined to contend for it. Whatever of error or irregularity there may have been in this respect must be held to have been cured, if not by the stipulation for release of errors, certainly by promptly remitting the item objected to. *In re Ellis, ante,* p. 88.

It follows from these views that the order of the circuit court for Milwaukee county, directing the sheriff of Milwaukee county to forthwith turn over to said assignee, all and singular, the property levied upon by him under said executions, must be reversed, with costs, and the cause remanded with directions that said court cause said property, or its proceeds, to be restored to the sheriff of Milwaukee county, to be disposed of and applied in satisfaction of the executions mentioned; and that the order of the superior court appealed from by the *Second Ward Savings Bank* of Milwaukee must be reversed, with costs, and the cause remanded to that court with directions to cause to be restored to the sheriff of Milwaukee county the property or its proceeds, turned over by the order of that court to *Henry C. Schranck* as assignee of Louis Henes, Jr., to the end that it may be applied in satisfaction of the said judgments in favor of the *Second Ward Savings Bank* of Milwaukee against said Louis Henes, Jr., the assignor; and that the part of the order of said superior court refusing to vacate the said judgment and

execution against the said Louis Henes, Jr., must be affirmed, with costs.

*By the Court.*— Judgment is ordered accordingly.

CASSODAY, C. J. (dissenting).   The power of a state legislature to pass state insolvent laws was determined by the supreme court of the United States seventy years ago, but only after one of the most able and persistent controversies ever experienced by that exalted tribunal.   *Ogden v. Saunders,* 12 Wheat. 213–369.   It was there held that (1) in the absence of legislation by congress on the subject a state had the authority to pass such a law; (2) that "a bankrupt or insolvent law of any state which discharges both the person of the debtor, and his future acquisitions of property, is not 'a law impairing the obligation of contracts,' so far as respects debts contracted subsequent to the passage of such law;" (3) but that a "certificate of discharge, under such a law, cannot be pleaded in bar of an action brought by a citizen of another state, in the courts of the United States, or of any other state than that where the discharge was obtained."   There were at the time only seven members of the court, and Mr. Justice JOHNSON wrote the only opinion in support of the third proposition quoted, and was the only member of the court concurring in all three propositions stated.   MARSHALL, DUVAL, and STORY dissented from the first and second propositions, and WASHINGTON, THOMPSON, and TRIMBLE dissented from the third proposition.   The three propositions thus determined in that case have since been repeatedly acquiesced in by the whole court as the settled law of this country on the subject.   *Boyle v. Zacharie,* 6 Pet. 348, 635, 648; *Cook v. Moffat,* 5 How. 310.

Thus, it appears that the opinions of Mr. Justice JOHNSON were the controlling opinions in the case, and hence what he said about impairing the obligation of contracts may be

instructive. "Right and obligation are considered by all ethical writers as correlative terms. Whatever I by my contract give another a right to require of me, I by that act lay myself under an obligation to yield or bestow. The obligation of every contract will then consist of that right or power over my will or actions which I by my contract confer on another. And that right and power will be found to be measured neither by moral law alone, nor universal law alone, nor by the laws of society alone, but by a combination of the three,— an operation in which the moral law is explained and applied by the law of nature, and both modified and adapted to the exigencies of society by positive law. The constitution was framed for society, and an advanced state of society, in which I will undertake to say that all the contracts of men receive a relative, and not a positive, interpretation; for the rights of all must be held and enjoyed in subserviency to the good of the whole. The state construes them, the state applies them, the state controls them, and the state decides how far the social exercise of the rights they give us over each other can be justly asserted. . . . In the concoction of their contracts, they are controlled by the laws of the society of which they are members, and for the construction and enforcement of their contracts they rest upon the functionaries of its government. They can enter into no contract which the laws of that community forbid, and the validity and effect of their contracts is what the existing laws give to them. The remedy is no longer retained in their own hands, but surrendered to the community, to a power competent to do justice, and bound to discharge towards them the acknowledged duties of government to society, according to received principles of equal justice. . . . When that state of things has arrived in which the community has fairly and fully discharged its duties to the creditor, and in which pursuing the debtor any longer would destroy the one, without benefiting the other,

Second Ward Savings Bank of Milwaukee vs. Schranck.

must always be a question to be determined by the common guardian of the rights of both, and in this originates the power exercised by governments in favor of insolvents." *Ogden v. Saunders*, 12 Wheat. 281–283. And then, after stating that his views thus expressed were as applicable to contracts prior to the enactment as to those subsequently made, he said: "Whenever an individual enters into a contract, I think his assent is to be inferred, to abide by those rules in the administration of justice which belong to the jurisprudence of the country of the contract. . And, when compelled to pursue his debtor in other states, he is equally bound to acquiesce in the law of the forum to which he subjects himself. *The law of the contract remains the same everywhere, and it will be the same in every tribunal;* but the remedy necessarily varies, and with it the effect of the constitutional pledge, which can only have relation to the laws of distributive justice known to the policy of each state severally. It is very true that inconveniences may occasionally grow out of irregularities in the administration of justice by the states. But the citizen of the same state is referred to his influence over his own institutions for his security, and the citizens of the other states have the institutions and powers of the general government to resort to. And this is all the security the constitution ever intended to hold out against the undue exercise of the power of the states over their own contracts and their own jurisprudence." *Id.* 285.

And so it was held by the same court, prior to that decision, that while a state statute could not discharge a debtor from liability on debts contracted before its passage, and thus destroy the creditor's right to satisfaction out of the debtor's subsequent acquisitions of property, yet that it might take away his remedy, given by statute, to imprison the debtor, since such imprisonment was no part of the contract, and hence the debtor's release therefrom did not im-

pair the contract. *Sturges v. Crowninshield*, 4 Wheat. 122:
Thus, it is held by the same court that a state may, by stat-
ute, "reduce the rate of interest upon judgments previously
obtained in its courts," without impairing the obligation of
contracts — since such interest is given by statute, and not
by contract. *Morley v. L. S. & M. S. R. Co.* 146 U. S. 162.
So where the statute gave a lien for labor and materials
contracted for, it has been held that "the lien is no part of
the contract, but a merely incidental accompaniment, de-
riving its vitality from positive enactment, and liable always
to be controlled, modified, or taken away by subsequent en-
actment." *Frost v. Ilsley*, 54 Me. 345. So it was held by
this court nearly forty years ago that an act of the legisla-
ture extending the time to answer in actions to foreclose a
bond and mortgage previously given, from twenty days to
six months, and also enlarging the time required for notice
of sale of the mortgaged premises, was a valid enactment;
that "the legislature may alter or vary existing remedies as
they please, provided that in so doing their nature and ex-
tent are not so changed as materially to impair the rights
and interests of the parties." *Von Baumbach v. Bade*, 9
Wis. 560. This was held on the theory that a state statute
may impair the remedy on an existing contract, without
necessarily impairing the contract itself; that "the only
limit or qualification to this power is that the legislature
must confine their action within the bounds of reason and
justice, and not so prolong the time in which legal proceed-
ings are to be had as to render them futile and useless in
the hands of the creditor, or to seriously impair his rights
and securities." *Id.*

In the case at bar the note and warrant of attorney were
dated August 15, 1896. Ch. 334, Laws of 1897, was pub-
lished and went into effect April 30, 1897, and, among other
things, provided that all attachments, levies, garnishments,

or other process against an insolvent debtor, within ten days prior to an assignment for the benefit of creditors, made by such debtor, shall be dissolved, and the property attached or levied upon be turned over to the assignee. The judgment in question was entered upon the warrant of attorney May 4, 1897. On the same day execution was issued thereon, and levied on certain personal property of the debtor. Six days thereafter the debtor made a voluntary assignment for the benefit of his creditors. It is conceded that the judgment was rightfully entered, because it was so expressly stipulated in the contract; but, although the contract released all intervening errors in the entering of the judgment or the issuing of the execution, yet the only right to execution was by existing remedial statutes, and not by virtue of the contract itself. The act does not undertake to discharge the debtor from subsequent debts,— much less from prior debts. In 1883 insolvent debtors were prohibited from giving preferences to one creditor over another in making assignments. Later statutes limited to a certain extent the right of creditors of such insolvent debtors to obtain preferences in certain ways, and within a specified time prior to the making of such assignment by the debtors. S. & B. Ann. Stats. sec. 1693a. The act in question was manifestly designed to narrow such limits still further, and to secure, at least to some extent, a more equal distribution of the estates of insolvent debtors. The insolvent laws of several states expressly provide for dissolving attachments and releasing levies on the property of insolvent debtors under certain conditions. It would seem that in some of them the question here presented, as to prior contracts, must have arisen and been adjudicated soon after such enactments; but we have been referred to no case, and I have not had the time to search for any. Upon general principles and under the authorities cited, it seems to me that state legislatures have the power,

by the enactment of general laws, to secure an equal distribution of the estate of an insolvent debtor, even as to prior debts or nonresident creditors.

There is another line of cases supporting these views. It has been held by numerous decisions, state and federal, that the discharge of the debtor under a state insolvent law in the state of his domicile will not release him from debts owing to nonresidents, even where such insolvent laws were enacted prior to the contract, unless the nonresident creditor has proven his claim, or become a party to the proceedings. *Cook v. Moffat,* 5 How. 295; *Baldwin v. Hale,* 1 Wall. 223; *Gilman v. Lockwood,* 4 Wall. 409; *Stirn v. McQuade,* 66 N. H. 403; *Kelley v. Drury,* 9 Allen, 27; *Guernsey v. Wood,* 130 Mass. 503; *Phœnix Nat. Bank v. Batcheller,* 151 Mass. 589. In other words, such nonresident creditor, not proving his claim nor becoming a party to the proceedings, is no more affected by the insolvency proceedings than a creditor whose debt was contracted prior to the enactment of the insolvent law. In *Denny v. Bennett,* 128 U. S. 489, Purdy & Co. sued Van Norman & Bro. in a state court of Minnesota, and attached a part of their goods December 31, 1883. On the same day Van Norman & Bro. made an assignment to Bennett, under the state law, for the benefit of such creditors as proved up their claims. On the same day Lopp & Flersham sued Van Norman & Bro. in the United States circuit court, and the United States marshal, Denny, attached a portion of their goods, but they did not prove up their claim in the insolvency proceedings. Thereupon the assignee, Bennett, sued the United States marshal, Denny, for the value of the goods so taken by him, and obtained judgment in the state court, which was affirmed in the supreme court of Minnesota. And that judgment was affirmed on writ of error by the supreme court of the United States, where it was held, in effect, that a discharge from debts under the insolvent laws of a state did not release debts due

to a citizen of another state, who had not proved up his claim, nor submitted to the jurisdiction of the state court; that the assignee, Bennett, under the state law, was entitled to the property, against such foreign creditor so attaching the same in the United States circuit court, *and the depriving of such foreign creditor of any remedy, as against the goods so attached and assigned, was permissible, and did not impair the obligations of such contract.* Such lien by such attachment in a suit in favor of a nonresident in the federal court was no more subject to be dissolved by the insolvency proceedings than an attachment or levy in the state court in favor of a resident creditor upon a contract made prior to the insolvent statute. The same court has since held, in effect, that a deed of conveyance made by an insolvent debtor to a nonresident creditor by way of preference may be avoided by state insolvency proceedings within the time limited therein, notwithstanding such foreign creditors were not served with process, and could not have been compelled to become parties to the insolvency proceedings, even if they had been served. *Brown v. Smart,* 69 Md. 320; *S. C.* affirmed, 145 U. S. 454. This was on the theory that the property and debtor were within the state, and the jurisdiction was *in rem.*

As indicated, the act in question does not undertake to discharge the insolvent debtor, nor to exempt his subsequent acquisition of property, but merely to prevent preferences, to the extent mentioned, out of such of the insolvent's estate as it existed at the time of making the assignment. It merely suspends the ordinary effect of such levy during the ten days immediately preceding such assignment. In my judgment, and in view of the adjudications cited, the act did not impair the obligation of contracts, even as to the debt previously contracted.