HEATH & MILLIGAN MANUF'G CO. v. UNION OIL & PAINT CO.

(Circuit Court, E. D. Wisconsin. November 20, 1897.)

CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS—ATTACHMENT.

A state statute providing that, on the making of an assignment by a debtor within 10 days after the levy of an attachment, the attachment shall be dissolved, and the property turned over to the assignee (Acts Wis. 1897, c. 334), thereby relegating the attaching creditor to a mere judgment and a participation in the distribution under the assignment, coupled with a release of any balance not thus satisfied, impairs the obligation of contracts, as applied to an attachment founded on an indebtedness contracted prior to the passage of the act.

On petition of the defendant and Frank B. Schutz, assignee thereof under voluntary assignment for the benefit of creditors, for discharge of an attachment issued out of this court, and release of the property attached, pursuant to the provisions of chapter 334 of the Laws of Wisconsin for 1897.

David S. Rose, for petitioners.

Miller, Noyes, Miller & Wahl, for plaintiff.

SEAMAN, District Judge. This action is founded upon an indebtedness alleged to have been contracted prior to April 30, 1897, when the enactment in question came into effect. The writ of attachment was issued and the levy made September 9, 1897, upon an affidavit on behalf of the plaintiff that the indebtedness was fraudulently contracted by the defendant. Within 10 days thereafter the defendant executed an assignment for the benefit of creditors in accordance with the statute, thus bringing the case within the general terms of Acts 1897, c. 334, that, upon the making of an assignment by a debtor within 10 days after the levy of an attachment, the attachment and levy "shall be dissolved, and the property attached or levied upon shall be turned over to such assignee or receiver." Therefore the prayer of the petition must be granted, unless the act is inoperative upon this attachment because it is founded upon contracts entered into before the passage of the act. If application of the statute to such state of facts impairs the obligations of the contract, it is clearly to that extent in conflict with the constitution of the United States, and this involves an inquiry which must be governed by the rules of construction which prevail in the courts of federal jurisdiction. The decisions of the supreme court are both numerous and instructive as to various classes of legislation which are thus inhibited. They clearly establish the doctrine that taking away substantial remedies for enforcement of the contract, without substituting or leaving an adequate remedy in their place, impairs the obligation equally with legislation touching the express terms of the contract; and the opinions define such impairment in broad terms,—as in Bronson v. Kinzie, 1 How. 311, 317, "by burdening the proceeding with new conditions and restrictions, so as to make the remedy hardly worth pursuing,"—apparently covering in their general scope the effect produced by this enactment, when it is considered in all its bearings, with the restrictions imposed for obtaining benefit under the assignment.

Upon the argument of the case at bar it was stated that the question of the constitutionality of this statute was pending in the supreme court of Wisconsin, as affecting execution liens made under judgment by confession entered within 10 days before an assignment, upon judgment notes antedating the law, and that an early decision was expected. In view of the important interests involved, and of the salutary rule that an act of the legislature "must be beyond all reasonable doubt unconstitutional before the court would so declare it" (Sinking Fund Cases, 99 U. S. 700), and of the value, at least strongly persuasive, of a decision by that court either to raise or to solve the possible doubt, I deemed it proper to await such decision before finally taking up the inquiry. The opinion of the court by Mr. Justice Pinney was recently handed down in the case referred to (Bank v. Schranck, 73 N. W. 31), holding that the act impairs the obligations of the contract in question, and it states the rule of decision pronounced by the supreme court of the United States in the following comprehensive terms:

"That the test as to whether a contract has been impaired is whether its value has by legislation been diminished. It is not, by the constitution, to be impaired at all. This is not a question of degree, or manner or cause, but of encroaching in any respect on its obligation; dispensing with any part of its force."

It is contended that the case at bar is distinguishable because the interference is with an attachment, and not with the execution of a judgment, which was there involved; and, as a matter of first impression, there seemed to be force in the distinction, the remedy being provisional and statutory, and one not established through the common law, although the writ of attachment is recognized as a proceeding of great antiquity. But in the light of the undeviating line of decisions in the supreme court of the United States, from Bronson v. Kinzie, 1 How. 311, to Barnitz v. Beverly, 163 U. S. 118, 16 Sup. Ct. 1042, including Edwards v. Kearzey, 96 U. S. 595, which is specially applicable, and of the exposition of this rule in the opinion of the supreme court of Wisconsin above cited, I can entertain no reasonable doubt that the inhibition applies to this case, because the statute, as amended, not alone deprives the creditor of his priority under the attachment, but excludes him from all substantial enforcement of his contract, unless he shall come into the assignment proceedings, accept such share as the assets may furnish, and become bound by a release of all remaining indebtedness, as the statute prescribes. This exaction clearly impairs the obligations which entered into the contract when made. He was then assured of the right to save his claim by attachment if it should turn out, as here alleged, that the indebtedness was fraudulently contracted. That contingency presenting itself, he is now met by a legislative provision which attempts to place it within the power of the debtor to thus deprive him of the previously existing right to secure a lien; and not that alone, but he is further deprived of all remedy, save through the source of the assignment, burdened with the conditions referred to. As remarked in Louisiana v. New Orleans, 102 U. S. 203:

"The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced,—by which the parties can be obliged

to perform it. Whatever legislation lessens the efficiency of these means impairs the obligation. If it tends to postpone or retard the enforcement of the contract, the obligation is to that extent weakened, and the law is in conflict with the constitutional inhibition."

So, the obligation is clearly impaired in this case by discharging the attachment, and leaving the plaintiff without remedy for enforcement, even to the extent of a pro rata share in the assets, except upon release of all which may then remain unpaid. It may be that such provision constitutes an equitable and wise general policy for adoption as to all subsequent contracts, but it cannot be made retroactive, to destroy all effective remedies under pre-existing contracts. And this view is sanctioned by the opinion of Mr. Justice Miller in reference to an attachment under a similar statute, in Sloane v. Chiniquy, 22 Fed. 213, and inferentially in Denny v. Bennett, 128 U. S. 489, 9 Sup. Ct. 134. In the former case he says:

"Undoubtedly such a statute is void as against all creditors who were such before its passage, because it does impair the obligation of the contract as it existed at the time the contract was made. Before the law was passed it was a part of the right of the creditor to attach the property of the debtor under certain circumstances, and to hold it for the payment of the debt; and, apart from an attachment, he had a right to procure an ordinary judgment at law, and to levy upon the property of his debtor. So that, as to all debts arising on contract made before the passage of this statute, the law is inoperative and void as to them."

Although these remarks are obiter, they are of great value, as the deliberate opinion of that great jurist upon a subject which was frequently considered in the supreme court in its various phases during his membership.

It is true that the provision in this act, by which the creditor must become a party to the assignment and bound by the release for deficiency to obtain any share in the assets, is substantially a re-enactment of an old provision in the assignment law, but it is new in the feature which makes the remedy through the assignment practically exclusive, at least so far as concerns the case at bar. The pre-existing and time-honored remedies of execution and attachment are destroyed, and, while the entry of a judgment is not prohibited, the right thereto is of no value, where the debtor is a corporation, a bare entity, stripped of all assets by the assignment, leaving no practical remedy for the creditor.

I have given careful consideration to the argument of counsel in support of this legislation. Its logic is clear, and the citations are in point; but the authorities relied upon, and the argument as well, rest upon an interpretation of the obligations entering into a contract, and of the means of impairment, which is too narrow, in the constitutional sense, and the doctrine that no remedy for enforcing the contract can be taken away, unless another is preserved which is clear and adequate, is either ignored or not accepted in its full scope. I am therefore constrained to hold the statute inoperative so far as concerns the contract and attachment in question, and the petition must be dismissed. So ordered.