WILHELM, Appellant, vs. ORDER OF COLUMBIAN KNIGHTS, Respondent.

*April 24—May 14, 1912.*

*Life insurance: Fraud in application: Agent conspiring with insured: Invalidity of policy: Evidence: Statute changing rules: Waiver: Physicians: Competency: Privilege.*

1. An insurance company is not bound by a policy procured by means of false statements by the insured in his application, even though such statements were made at the solicitation of the company's agent and pursuant to a conspiracy to defraud entered into by the agent, the insured, and the beneficiary.

2. The legislature may change rules of evidence even though such change affects pending actions.

[3. Whether the law relating to testimony of physicians could be changed so as to deprive a life insurance company of a valid defense secured by a statement in an application for a policy that the applicant waived "any and all provisions of law now existing or that may hereafter exist, preventing any physician from disclosing any information acquired in attending me in a professional capacity, or otherwise, or rendering him incompetent as a witness in any way whatever,"—not determined.]

[4. Whether sec. 4075, Stats., as amended by ch. 322, Laws of 1911, would prevent an attending physician from testifying in such case, not determined.]

5. Aside from the testimony of physicians in a case where the insured had stated and warranted in his application that he had not consulted a physician within five years and had never been under the care of a physician, the testimony of the beneficiary, the widow of the insured, showing that he consulted a physician and submitted to a surgical operation a few months before making the application, was sufficient to show a misrepresentation as to a material fact, invalidating the policy.

APPEAL from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed.*

On or about February 15, 1909, John C. Wilhelm was received into the *Order of Columbian Knights* as an insurance member, and thereafter during his lifetime paid the required dues and complied with the rules and regulations of the order. He died on August 14, 1910, and after proof and due notice of his death demand was made by the plaintiff, the beneficiary of the insured, for the amount due upon the certificate of insurance, which payment was refused, and this action was brought to recover the amount alleged to be due. By its answer to the complaint the defendant alleged that the certificate of insurance was void because of misrepresentations made by the insured in his application for insurance, as to his condition of health, previous illness, etc., and on the trial testimony was introduced tending to show that the insured, prior to the time of his application for insurance, had been afflicted with certain ailments which in his application he denied having had, and that in June, 1908, he was confined to a hospital and at that time underwent a surgical operation. At the close of the testimony the court directed a verdict for the defendant, and from a judgment entered on such verdict this appeal is taken.

*Paul D. Durant,* for the appellant.

For the respondent there was a brief by *Churchill, Bennett & Churchill,* and oral argument by *W. H. Churchill* and *W. H. Bennett.*

BARNES, J. In his application for insurance, dated January 25, 1909, the deceased stated that he had never had calculus or gravel; that he had never had any other sickness, disease, or injury; that he had not consulted a physician within the preceding five years; that he was never under the care of a physician, and that he had no ailment, disease, nor

suspicion of any. Deceased warranted all of these representations to be true.

The evidence showed that the deceased consulted one Dr. Tisdale in June, 1908, and stated to him that he had been sick since October, 1907, being first taken with vomiting and dizzy spells, and that he had lost thirty-three pounds in weight, and suffered pain in the upper part of the abdomen; that Dr. Tisdale made an examination and found the liver enlarged and advised a surgical operation; that later Drs. Tisdale and Jobse held a consultation over the deceased, and that on June 20th he went to Trinity Hospital and on June 23d was operated upon. Dr. Tisdale testified that the bowels were grown together and the gall duct leading from the gall bladder to the bowel was closed and the lining of the gall bladder was infected and showed evidences of there having been pus therein at some time.

The application for the policy was solicited and secured by one Hoffmann, an agent for the defendant, although the answers in the application relating to the health of the insured were given to the defendant's medical examiner. The plaintiff undertook to show that defendant had waived its right to claim an avoidance of the contract because of the misrepresentations made by the insured by making the following offer of proof, which the court rejected:

We propose to show that "Mr. Wilhelm was induced to make an application for membership into the order, and submitted to a medical examination, and to make statements in the application which are untrue, and answers to the questions put by the medical examiner which were untrue, and that at the time this application was brought, and before it was signed, *Mrs. Wilhelm* and Mr. Wilhelm both fully advised Mr. Hoffmann of the then exact condition, and previous physical condition of the deceased, and that the deceased objected to making the application, for the reason that he did not think that he could be admitted because of his prior existing condition, and that, relying entirely upon the representation and

statements of the agent, Hoffmann, Mr. Wilhelm was induced
to sign and did sign the application and make the medical ex-
amination in suit, and thereupon the policy was issued.

"Court: And make statements in the same that he knew at
the time he made them were false?

"Mr. Durant: Untrue, yes.

We have here a case where the agent of the defendant, and
the insured and the beneficiary, his wife, entered into a con-
spiracy to defraud the defendant by securing a policy of in-
surance by means of false representations, a policy which they
knew could not be obtained if the truth were disclosed.   If we
were without precedent for our guidance, we would have little
inclination to make the court the fourth member of that con-
spiracy by assisting in the consummation of the fraud, but we
are not.   This case comes squarely within the decision in *Hanf
v. Northwestern M. A. Asso.* 76 Wis. 450, 45 N. W. 315, and
it would be superfluous to say anything more about this branch
of it.

The appellant urges, however, that the evidence of the phy-
sicians was incompetent under sec. 4075, Stats., as amended
by ch. 322, Laws of 1911.   The application contained the fol-
lowing statement:

"And for myself and for any person or persons accepting
or acquiring any interest in any benefit certificate issued on
this application, I hereby expressly waive any and all pro-
visions of law now existing or that may hereafter exist, pre-
venting any physician from disclosing any information ac-
quired in attending me in a professional capacity, or other-
wise, or rendering him incompetent as a witness in any way
whatever, and I hereby consent and request that any such
physician testify concerning my health and physical condi-
tion, past, present, or future."

There are many cases which hold that such a waiver of a
statutory privilege is valid.   *Fuller v. Knights of Pythias,*
129 N. C. 318, 40 S. E. 65; *Foley v. Royal Arcanum,* 151
N. Y. 196, 45 N. E. 456; *Adreveno v. Mut. Res. F. L. Asso.*

34 Fed. 870; *Western T. A. Asso. v. Munson,* 73 Neb. 858, 103 N. W. 688; *Trull v. Modern Woodmen,* 12 Idaho, 318, 85 Pac. 1081; *Metropolitan L. Ins. Co. v. Willis,* 37 Ind. App. 48, 76 N. E. 560. And there are other cases which hold that under such a statute as sec. 4075 a physician may testify that he was consulted by a person afterwards deceased and that he attended such person professionally, although he may not disclose the nature of the disease or the character of the treatment. *Nelson v. Nederland L. Ins. Co.* 110 Iowa, 600, 81 N. W. 807; *Briesenmeister v. Supreme Lodge,* 81 Mich. 525, 45 N. W. 977; 10 Ency. of Ev. 127, 128.

But it is said that a radical change was made in sec. 4075 by the amendment of 1911, and that under the latter no physician *"is permitted"* to disclose any information obtained by attending a patient in a professional capacity. It is a well established rule of law that the legislature may change rules of evidence even though such change affects pending actions. Whether a change could be made so as to practically deprive a party of a valid defense accrued under such a provision as that above quoted we need not inquire, and neither are we called upon to determine the effect of the 1911 amendment. The widow of the deceased, the beneficiary under the policy, testified that her husband was operated on at Trinity Hospital during the summer of 1908 by Dr. Tisdale. This testimony was in itself sufficient to show a misrepresentation as to a material fact in the application for insurance. The evidence of the physicians went into detail and showed the condition that was found, but aside from their evidence it was shown that the deceased consulted a physician and submitted to a surgical operation a few months before he made his application for insurance, which facts were denied in the application.

The judgment of the circuit court is right and should be affirmed.

*By the Court.*—Judgment affirmed.