JOHNSON, Appellant, vs. DOOR COUNTY, Respondent.

*May 25—June 17, 1914.*

*Insane persons: Support in hospital: Property liable: Homestead: Sale by guardian: Payment to county out of proceeds: Harmless irregularities in procedure.*

1. Under sec. 604q, Stats., the entire property and estate of an insane ward is made liable for his support and maintenance and chargeable with the payment thereof, and there is no exception in favor of the homestead.

2. The only provision for exemption of any part of the property is to be found in the same section in the clause which permits the judge, in his discretion, to refuse to enter judgment in any case where a parent, wife, or child is dependent on the property or estate for future support.

3. Where the homestead of an insane ward was sold by his guardian under license from the county court, and a portion of the proceeds paid over to the county on account of an allowed claim in its favor for maintenance of the ward in a state hospital for the insane, the county, having an equitable claim to the money, was entitled to retain it, notwithstanding the procedure pointed out by statute for obtaining it was not followed.

APPEAL from a judgment of the circuit court for Door county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Kaftan & Reynolds,* and oral argument by *R. A. Kaftan.*

*Thomas A. Sanderson,* district attorney, for the respondent.

TIMLIN, J.   The plaintiff was on or about June 15, 1901, a bachelor fifty-six years of age, a resident of, and the owner of a homestead in, *Door County,* and adjudged insane and committed to the Northern Hospital for the Insane at Winnebago, Wisconsin, by the county judge of *Door County.* From there he escaped in December, 1910, and in 1911 filed a claim with the county clerk against *Door County,* for the sum of $429.75, based upon the charge that in May, 1905, his guardian, one Andrew Nelson, made application to the

county court of *Door County* for, and obtained, an order of license to sell the homestead of the plaintiff and did sell such homestead, and out of the proceeds of this sale paid over to *Door County* $429.75 on account of a claim of that county for plaintiff's maintenance in the said insane asylum. The county board rejected the claim, the plaintiff appealed to the circuit court for that county, which gave judgment for the defendant. The petition of the guardian for authority to sell did not disclose the fact that this was plaintiff's homestead, and the reasons given in said petition were that the personal property and income of the real estate were insufficient for the payment of the plaintiff's debts or for his maintenance, and that the interest of the plaintiff requires and will be substantially promoted by the sale of the real estate on account of said real estate being exposed to waste and dilapidation. The claim filed by *Door County* in the matter of the guardianship of the plaintiff was for board, clothing, and maintenance of the plaintiff at the hospital for the insane prior to September 25, 1906, and amounted to $481.94. The claim was allowed in the guardianship; the guardian paid the proceeds of the sale of the land, amounting to $429.75, to the county on this claim; and the guardian rendered a final account including this disbursement, which account was allowed after notice as required by law. In these proceedings the plaintiff was represented by guardian *ad litem*. The circuit judge, Hon. S. D. HASTINGS, who presided, delivered a written opinion as follows:

"The case stands before this court in the nature of an action for money had and received for the plaintiff's use. And the question is whether in equity and good conscience the defendant should be allowed to retain it. The validity of the claim of the county against the estate of the ward, *Johnson,* is not questioned. Had it been paid by the guardian on the order of the county court out of conceded nonexempt property or funds, the right of the county to the money would not be questioned. The claim against the county is based upon

the proposition that *Johnson's* homestead and the proceeds from sale of it were exempt and could not be applied in payment of the county's claim or judgment against his estate. The defendant's contention is that a homestead may be sold and the proceeds applied to the maintenance of the ward, especially an insane ward, and that if that be true it may be sold and applied to the payment of debts incurred for the support and maintenance of the ward.

"There are two classes of statutory provisions relied on: first, those relating to guardian and ward generally, and those relating to insane. Ch. 170, Stats., relates to guardians and wards generally, including guardianship of minors, insane, incompetent, etc.; and a general provision concerning all classes is sec. 3983:

" 'Every guardian shall manage the estate of his ward frugally and without waste and apply the income and profit thereof, as far as may be necessary, for the suitable education, maintenance and support of the ward and his family, if there be any. If such income and profits shall be insufficient for that purpose the guardian may sell the real estate, upon obtaining a license therefor as provided by law, and shall apply the proceeds of such sale, so far as may be necessary, for such maintenance and support.' Sec. 3983, Stats. 1898.

"Ch. 171, Stats., relates to the sale of lands of wards generally. It authorizes such sale 'when the personal property and the income of the real estate are together insufficient for the payment of the debts of the ward or for the maintenance and education of the ward and his family.' Sec. 3996, Stats. 1898. Statutes relating to insane, sec. 3979a, Stats. 1898, provide that whenever it appears to the satisfaction of the hospital superintendent that an insane patient is incurable and it shall appear that he has property within this state, that he has no wife or children who would be dependent upon him for support if sane, and that he has no guardian, such superintendent shall apply for appointment of a guardian with

powers of a guardian of his person and estate and the court shall appoint a guardian with powers of a guardian for minors, and said guardian may sell any real or personal estate, the property' of such insane person, in the same manner and for the same purposes as is or may be provided by law for the sale by guardians of minors of the real and personal estate of their wards, and the proceeds shall be paid into the treasury of the state or county for the use and benefit of such insane person, and be applied to his use and support in such hospital. It further provides for the disposition of any of.said funds left upon discharge or death of the insane person.

"Sec. 3982, Stats. 1898, provides for guardians compounding and paying debts of ward out of his personal property and income of his real estate if sufficient, and if not then out of his real estate upon selling the same as provided by law. Then follows a provision for general guardian of an insane person showing to the court that his ward is insolvent and for proof of debts against him and settlement of them as provided for settlement of debts of deceased persons in county court as provided in ch. 165. Sec. 3862, one of the sections of ch. 165, provides that 'all the estate of the testator or intestate, real and personal, except the homestead of the deceased and the property disposed of under the provisions of sec. 3935, shall be liable to be disposed of for the payment of his debts.' The section, 3982, ends with this provision: 'provided that nothing in this section shall authorize the sale of the homestead.' Sec. 604q, Stats. (Supp. 1906), provides that 'the property and estate of any insane person kept in any state or county hospital or county asylum or kept by any county at its charge shall be liable for his support and maintenance and chargeable for the payment thereof, and upon failure of the person having the charge or custody of such property or estate to pay therefrom for such support and maintenance,' officers named or the chairman of the board of the county furnishing such support may apply to the proper

county judge to compel such payment, and such judge shall have the jurisdiction and authority conferred by ch. 63, and shall exercise the same in the manner provided by said chapter, and may enforce obedience to his orders by proceedings as for contempt. The section further provides that if the order is not complied with the board or chairman may bring an action in circuit court against the party having charge or custody of such property or estate in his representative character, and any judgment recovered may be satisfied out of such property or estate, 'provided that the judge may, in his discretion, refuse to render judgment for the plaintiff in any case where a parent, wife or child is dependent on such property or estate for future support, and that the amount to be paid, when ordered by such county judge, shall be a reasonable compensation,' etc. Sec. 2983, Stats., provides that 'a homestead . . . owned and occupied by any resident of this state, shall be exempt from seizure or sale on execution, from the lien of every judgment and from liability in any form for the debts of such owner, except laborers,' mechanics' and purchase-money liens, and mortgages lawfully executed, and taxes lawfully assessed, and except as otherwise specially provided in these statutes.' Sec. 2271 provides that upon death of the owner his homestead 'shall descend, free of all judgments and claims against such deceased owner or his estate except mortgages lawfully executed thereon and laborers' and mechanics' liens, in the manner following.' A homestead ceases to be the homestead of its owner upon his death. . The widow or children to whom it descends do not hold it as her or their homestead because it was the homestead of the deceased husband or father. The homestead character of the property simply determines to whom the legal title descends. And that it shall descend free from all but specified debts of the deceased owner. A widow or child may make it her or his homestead just as he or she could any other property acquired. A minor is not likely to have a homestead, but may. The ne-

cessity for selling the homestead of a minor by his guardian for his support and maintenance would rarely arise, if ever. But necessity for so doing, if permissible, might frequently arise if the ward is incompetent, imbecile, or insane.   The authority to make such sale in all cases except an insane ward supported in an asylum must be found in the general provisions relative to all wards.   And the first question is, Can the homestead of the ward be sold for that purpose ?   The answer to this question must depend wholly upon the fact of homestead, and if for that reason exempt, no other circumstance can affect it.   We have the case of a bachelor with no living relatives close enough to be liable for support, or able to support, and a homestead, and no other property, and not income enough from the homestead to pay the taxes on it.   Is he to be a town pauper or public charge during his life and his homestead descend, upon his death, to his next kin subject to his debt, sec. 2271, sub. 4, or free from debts, sec. 2270, sub. 4.   If the ward has a wife and half a dozen infant children which she must support by her manual labor, and no property but a little homestead and a few dollars' worth of household furniture,—is the homestead liable to be sold for his support and maintenance and his family turned upon the street ?

"There is nothing in the statute which authorizes the sale of a ward's real estate for his support and maintenance that excepts his homestead from what may be sold.   If a homestead may be sold and converted into money he ceases to have a homestead.   The proceeds of sale of homestead may remain exempt for two years if held with intent to procure another therewith.   The insane ward can have no such intent, neither can the imbecile, and probably not the incompetent or the minor.   Perhaps the law will intend for him, as it elects for an insane widow.   Can the proceeds of sale be used for the support of a ward after two years but not before ?   If it cannot be used for his support, it is simply because the home-

stead is exempt and cannot be taken to pay the owner's debts. But much personal property is also exempt. If the mere fact of exemption from debts prevents property of a ward being used or disposed of for support and maintenance of the ward, no exempt personal property could be so used. A man might become insane or incompetent, owning exempt personal property and nothing else, worth thousands of dollars, e. g. a team and carriage, an interest in a patented invention, insurance money just received for a homestead destroyed by fire.

"There is no provision of statute as to wards' property generally being chargeable with their support and maintenance other than that authorizing sale of real estate for that purpose when necessary. The guardian stands in the place of his ward and can expend his ward's property for the ward's benefit as the ward could if not under guardianship, within certain limitations imposed by law, and I do not think that there is anything in the law exempting the ward's property from liability to be taken to pay his debts that prevents the guardian expending the ward's exempt property for the ward's support and maintenance.

"Sec. 604q provides specially that the property and estate of an insane ward shall be liable for his support and maintenance and chargeable for the payment thereof. This is one of the sections in the chapter providing for insane asylums and the support of the insane. Those having no property are supported by the state and counties. This provision was deemed necessary to protect the public against being charged with the support of patients having property and estates. It not only makes such estates liable for support and maintenance, but chargeable for the payment thereof. But it was not the policy of the state to provide that all the property and estate of a patient should be taken and leave his family, if he had one, destitute. And it is provided that when judgment is obtained which may be satisfied out of such property or estate, the judge may, in his discretion, refuse to render judgment for the plaintiff in any case when a parent, wife, or

child is dependent on such property for future support. I think we must look to this provision for exemption of any of the property or estate.

"If I am correct in my conclusion up to this point, it follows that *Mr. Johnson's* homestead was liable to be sold and the proceeds used in paying for his support and maintenance in the insane asylum, and that the amount received by the county from the proceeds of the sale of his homestead was no greater than the law authorized to be paid to it from such proceeds. The fact that the steps pointed out by statute as the proper mode for getting the money into the county treasury were not followed is not material. The question is, Ought the county, in equity and good conscience, to pay the money back to the plaintiff?

"The plaintiff's counsel refers to sec. 600, Stats., as the only provision regarding the collection by the county of the amount charged to it by the asylum or hospital supporting the inmate, and says the county could only get judgment and the property could not be sold on execution on the judgment because exempt. It will be noted that that section does not provide for suing the insane person, getting judgment against him, and collecting by execution, but 'shall sue for and collect from the property of the patient.' The question goes right back to the meaning of the statute. Does the law, or does it not, contemplate that exempt as well as nonexempt property of the insane patient shall be devoted to his support and maintenance in the hospital or asylum?

"In *Richardson v. Stuesser,* 125 Wis. 66, 68, 103 N. W. 261, Mr. Justice MARSHALL says of sec. 604q, 'That makes the property of an insane person, who is kept in any state or county hospital or by any county otherwise at its expense, liable for his support, and provides a remedy for the enforcement of such liability.'

"Again, counsel argues that our statutory policy is that only such insane persons shall be cared for at public expense in state or county hospitals as have no property that can be

devoted thereto and no relatives legally bound therefor. That is true, but does not settle the question here at issue.

"I have been cited to no case which deals with the exact question. The case which comes nearest to it is *Holburn v. Pfanmiller's Adm'r*, 114 Ky. 831, 71 S. W. 940. The attempt was to collect from the property of a deceased lunatic for support and maintenance. The court says:

" 'Where patients, who have been or may be supported in either of said asylums, have or shall acquire estates which can be subjected to debt, the board of commissioners of such asylum, when reliably informed of the fact, is authorized and directed, in every such case, to sue for, in the name of the asylum, and recover the amount of said patient's board, . . . or so much thereof as such estate will suffice to pay for the time they shall have been respectively kept,' etc. 'The question, then, is, Did P. have an estate which could be subjected to debt?'

"The court then decides that his property was his homestead and says:

" 'We therefore conclude that there was no period during the life of P. and since his commitment to the asylum when he owned any "estate that could be subjected to debt." . . . Strictly speaking, the claim of the asylum is not a debt. It is true it is a charge provided by law against certain estate of the lunatic—not against him—to be enforced *in rem* in the contingency and the manner only prescribed by the statute.'

"Neither the Wisconsin nor the Kentucky statutes make the charge of a debt of the insane collectible in the manner and to the extent that a debt is collected, and only from nonexempt property, but it makes his property liable, and the remedies provided are for collection from his property, and there is no limitation to his property not exempt from execution or not liable for his debts in our statute. When provision is made for the payment of debts of insane, a provision is inserted to the effect that the statute shall not be construed as authorizing the sale of homestead for that purpose. Sec. 604q, Stats.

Supp. 1906, (1) first makes the property and estate liable for support and maintenance; (2) chargeable for payment thereof; (3) recognizes the duty of the party having custody of the property to pay; 'and upon failure of the person having the charge or custody of such property or estate to pay therefrom for such support and maintenance' (4) provides a remedy for enforcing payment out of such property or estate in case the payment is not voluntarily made.

"Cannot a guardian of a helpless ward, with no estate in his hands except proceeds of sale of a homestead of the ward, use the money for support and maintenance of the ward? He could get no support from town, city, or county as a poor person.    Would he starve because his money was exempt—a homestead?    If the money could be used for his support and maintenance, then it seems to me clear that the homestead could be sold to raise the money if necessary for that purpose.

"It is said that if it be conceded that the property, including the homestead, might have been sold and proceeds applied to the support of the insane owner, that it might have been paid to the county and used by it for the patient's support, it was not done in that way, that the county first paid for the support, and then had its claim in the nature of a debt paid out of the proceeds of the homestead which was not liable to be taken for the payment of debts.    I do not think that the rights of the parties in this action depend upon the regularity of the proceedings taken.    If the property was chargeable with payment of the owner's support in the asylum and it went where the law provided it might go, the defendant has the same equitable right to claim it that it would have had if it had been obtained by technically legal remedies.

"It is my opinion that the plaintiff has shown no right to the money and that the defendant is entitled to judgment dismissing claim with costs.

"Dated June, 1912."

*By the Court.*—Affirmed on the opinion of the court below.