In re Guardianship of Sprain : Sprain, Guardian, Appellant, vs. State Board of Control, Respondent.

*November 6—December 3, 1935.*

*Charles A. Taylor* of Barron, for the appellant.

For the respondent there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

NELSON, J. On November 22, 1921, an information was filed in the circuit court for Barron county against Henry Sprain which charged him with the crime of assault with intent to murder. On being arraigned, a plea of not guilty was filed, based upon the assertion that he was insane at the time the alleged offense was committed. It was further asserted that he was still insane, and for that reason should not then be tried. The presiding judge, after summary hearing, committed the accused to the central state hospital for the insane for five months from November 22, 1921, for purposes of observation as to his sanity, pursuant to the provisions of sec. 4066—3, Stats. 1921. On or about April 26, 1922, he was returned to the circuit court for Barron county for further proceedings and was thereafter, on May 26, 1922, adjudged insane; whereupon it was ordered that his trial be postponed indefinitely and that he be committed to the central state hospital as provided by law. Sec. 4700, Stats. 1921. Pursuant to such commitment, Henry Sprain was continuously confined in said hospital until June 20, 1927,

when he was transferred to the Columbia county asylum where he is still a patient. In guardianship proceedings duly had in the county court of Barron county, the State Board of Control filed its claim for the care and maintenance of said incompetent, amounting to $3,220.38. The first item of its claim is based upon the care and maintenance furnished during the time that Sprain was committed to central state hospital for observation purposes. Subsequent items are for care and maintenance furnished him at said hospital from July 1, 1922, to June 20, 1927. For all care and maintenance furnished at central state hospital the board seeks a recovery based on *per capita* cost. That cost varied from year to year; $9.07 per week during the fiscal year 1922-1923, being the lowest and $12.76 during the year 1924-1925 being the highest. The final items relate to the period subsequent to June 20, 1927, when Sprain was transferred to Columbia county asylum. As to these the board seeks to recover only one half of the statutory expense rate as provided by sec. 51.08, Stats., and prior statutes, which statutory rate was $4.80 per week from June 20, 1927, to June 30, 1933, and $4.20 per week thereafter. The county court allowed the plaintiff's claim at $3,228.38. No objection is made by the defendant to the allowance of so much of the board's claim as is based upon the care and maintenance furnished while Sprain was an inmate of Columbia county asylum. But the guardian contends, (1) that his ward was improperly charged for care and maintenance while he was committed to the central state hospital for purposes of observation only; and (2) that after his ward was adjudged to be insane and committed to that hospital, he was liable only for *the value* of such care and maintenance, not the *per capita* cost thereof.

As to defendant's first contention, it is our opinion that while Sprain was confined in the hospital for observation

purposes, he was held by virtue of the criminal warrant. Clearly, in the absence of a statute so providing, a defendant in a criminal prosecution, who is confined in jail pending his trial, or confined in jail or in prison after his conviction, is not chargeable with such support or maintenance, and an action may not be maintained against him or his estate to recover the value thereof. 50 C. J. p. 367, § 112. No statute has been cited which authorizes a recovery by a county or the state for the care and maintenance of one held as a prisoner in jail or elsewhere awaiting trial. It is our opinion, therefore, that the county court erroneously allowed that part of the plaintiff's claim which was based upon the care and maintenance furnished the incompetent while he was committed to the central state hospital for observation purposes only.

As to defendant's second contention, it is our opinion that it is without merit. In this state, the estate of an insane person is liable for the value of the support and maintenance furnished to him as an inmate of any state or municipal institution. That liability is created by sec. 49.10, Stats., which reads as follows:

"If any person at the time of receiving any relief, support or maintenance at public charge, under this chapter *or as an inmate of any state or municipal institution,* or at any time thereafter, is the owner of property, the authorities charged with the care of the poor of the municipality, *or the board in charge of the institution, chargeable with such relief, support or maintenance* may sue for and collect the value of the same against such person and against his estate. In any such action or proceeding the statutes of limitation shall not be pleaded in defense; but the court may, in its discretion, refuse to render judgment or allow the claim in favor of the claimant in any case where a parent, wife or child is dependent on such property for future support. *The records kept by the state* or municipality for the purpose of showing the names *and the value of the relief, support, or maintenance* furnished shall be *prima facie* evidence."

While conceding that sec. 49.10 is broad enough to include a claim made by the State Board of Control, the guardian contends that recovery should be based on the value of the care and maintenance furnished not on the *per capita* cost thereof. He earnestly contends that "the value" of the relief, support, or maintenance does not mean the *per capita* cost thereof. Sec. 49.10 is not as artistically drawn as it might have been in view of the various situations to which its language may be applicable. The value of relief granted to a poor person in case money or provisions are furnished may be accurately measured. In case a house is furnished as a part of the relief, the reasonable rental value thereof measures the value of such relief. What the legislature intended the word "value" to mean when applied to a situation like this where care, medical treatment, and maintenance are furnished to an inmate of a state institution, is not as clear as it might be. Considering sec. 49.10 as a whole, it is reasonably clear that the legislature intended to authorize a recovery for the value—the reasonable worth—of the relief, support, and maintenance furnished, and that the records of the state should be considered *prima facie* evidence of the value thereof. It is our opinion that average *per capita* cost may, in the absence of a showing that a charge based thereon is unreasonable, be considered as the value of such relief, support, or maintenance. *Per capita* cost of care, treatment, and maintenance at a state institution may vary from year to year, and such *per capita* cost at the central state hospital will, no doubt, for reasons that are obvious, be somewhat higher than that at other institutions. No attempt was made by the guardian to show that the charges, based upon the *per capita* cost of the care and maintenance furnished, were unreasonable, except in so far as they varied considerably from year to year, nor did he attempt to show that such charges were unreasonably high when compared with charges for similar care and maintenance at private institutions. It is our opin-

ion that the average annual cost per patient may properly be considered as measuring the value of the care and support furnished to an inmate of a state institution, in the absence of a showing that *per capita* cost amounts to an unreasonable charge. We can imagine a possible situation in which the number of inmates at the central state hospital might be so reduced as to make charges, based upon *per capita* cost, unreasonable.

The defendant further contends that his ward's estate should be charged only the statutory rate applicable to the apportionment of the expense of maintaining insane persons, between the county, in which such person has his legal settlement, and the state. Sec. 51.08 (1). It is our opinion that sec. 49.10, not sec. 51.08 (1), rules this controversy.

*By the Court.*—Judgment reversed, and cause remanded with directions to modify the judgment in accordance with the opinion.