ESTATE OF SLETTO : STATE BOARD OF CONTROL, Appellant,
vs. AARNESS, Administrator, Respondent.

*February 9—March 9, 1937.*

For the appellant there was a brief by *Blaine M. Linke,* collection and deportation counsel for the State Board of Control, and *Paul B. Knuese,* assistant counsel, and oral argument by *Mr. Knuese.*

*O. W. Sprecher* of Sparta, for the respondent.

FAIRCHILD, J.    The state has a claim.    The dispute is over the amount and the preference to be accorded in the matter of payment as against the homestead and dower rights of the widow.

The amount of the claim is to be arrived at by following sec. 604$q$, Stats. 1898, Sanborn & Sanborn's Anno. Supp. 1906, until its repeal in 1919, and from then on under the rule recognized in *Guardianship of Sprain,* 219 Wis. 591, 263 N. W. 648, where the statutes are reviewed.    This results in an allowance of $3 per week for the charges from December 6, 1907, to March 12, 1908, and the "value" thereafter.

The administrator objects to any allowance of the claim in excess of $2,542.13, the amount resulting from the use of the statutory rate ($3 per week before 1919 and the amounts fixed by sec. 51.08 (1) thereafter).    The trial court sustained him.    The refusal to allow "value" as provided by sec. 49.10 or *per capita* cost as provided by sec. 46.10 (7) and the refusal to admit as evidence of value the *per capita* cost at the institution, with some other objections, form the basis for this appeal and constitute reversible error.    The ruling below was based on two propositions: (1) That sec. 46.10 (7) cannot affect past transactions; and (2) that a practical interpretation of the controlling statutes existed, and under this interpretation, collections for maintenance at an insane

asylum must be those provided for in sec. 51.08 (1) for settlement between county and state.

(1) The portion of sec. 46.10 (7) to be considered in this appeal is a rule of evidence. The objection that it is retroactive legislation does not hold good in this case; here the question is not that of the creation of a new cause of action as in *Estate of Pelishek,* 216 Wis. 176, 256 N. W. 700. Being a rule of evidence, it is within the power of the legislature to control and change it even as to pending cases. *Will of McNaughton,* 138 Wis. 179, 188, 118 N. W. 997, 120 N. W. 288; *Wilhelm v. Columbian Knights,* 149 Wis. 585, 589, 136 N. W. 160. The objection to evidence properly within the provisions of the statute should have been overruled. When this evidence is offered, it is controlling unless some contravening consideration enters into the calculation. What was said in *Guardianship of Sprain, supra,* with reference to sec. 49.10 as it then read, may properly be said here of sec. 46.10 (7):

"It is reasonably clear that the legislature intended to authorize a recovery for the value—the reasonable worth—of the relief, support, and maintenance furnished, and that the records of the state should be considered *prima facie* evidence of the value thereof."

Under this rule of evidence the value of that which was obtained by Sletto during his life from the state may be shown. In the opinion in the *Sprain Case* it was also said:

"It is our opinion that the average annual cost per patient may properly be considered as measuring the value of the care and support furnished to an inmate of a state institution, in the absence of a showing that *per capita* cost amounts to an unreasonable charge."

The *per capita* cost may be used as evidence of reasonable value as to all of the claim arising while Sletto was cared for in the state institution with the exception of that relating to the care and treatment furnished him from December 6, 1907,

to March 12, 1908, prior to the amendment of sec. 604$q$, Stats., which was brought about by ch. 244, Laws of 1917. As to that period, from December 6, 1907, to March 12, 1908, sec. 604$q$ provided:

"The amount to be paid . . . shall be a reasonable compensation for such support and maintenance, but in no case to exceed the sum of three dollars per person per week."

(2) We find no occasion for resorting to a practical interpretation of the law, since the statute in this particular is plain, and such a statute could not be affected by a practice limited to a few cases. *Travelers' Ins. Co. v. Fricke,* 94 Wis. 258, 266, 68 N. W. 958; *State ex rel. Time Ins. Co. v. Smith,* 184 Wis. 455, 474, 200 N. W. 65; *United States v. Mo. Pac. R. Co.* 278 U. S. 269, 280, 49 Sup. Ct. 133.

The administrator claims that sec. 51.08 (1) was intended to apply to claims of the board of control against the estate of the insane person. Prior to 1935 it read:

"The expense of the maintenance, care and treatment of each inmate in any state or county hospital or asylum for the insane shall be computed at the rate of four dollars and twenty cents per week. For each such inmate maintained at public charge elsewhere than in the county of his legal settlement the whole rate shall be chargeable to the state and one-half thereof chargeable over by the state against the county, if any, in which such inmate has a legal settlement. For all other such inmates maintained at public charge one-half of said rate shall be chargeable to the state and one-half to the county in which such inmate has a legal settlement. All such charges shall be adjusted as provided in section 46.10."

This statute was held not to be controlling in the *Sprain Case, supra,* a somewhat analogous case, and it is our opinion that the purpose of that statute was to provide for a basis of accounting between the state and county which was taking care of the insane person. This intention, while present previously, as determined from the general plan of all the stat-

utes, was specifically expressed by the 1935 legislature. In the case of every insane person, whether he has property or not, there is an accounting between the state and the county of legal settlement or the county caring for him. This accounting is to be accomplished on the basis established by sec. 51.08 (1). Presumably, in many cases, the insane·person may have no property from which the state may be re-. imbursed, but in cases where such person is or becomes the owner of property, the Board of Control prior to 1935 found its authorization for collection in sec. 49.10 and its predecessors. After the 1935 amendment, the board's authorization was provided for in 46.10 (7), which section also provides that the board, when it has received money from the insane person, his estate, or relatives, must make a proper settlement with the counties.

The reasonable value of the maintenance and care of a patient in one of its tax-supported institutions has always been considered a proper charge to be made by the state against the property of the one so cared for. The trend of legislative policy, as gathered from enactments, has been toward providing means to render assistance to the needy, but also to protect the public treasury against burdens which ought to be borne by the property owned by the one receiving aid or paid for by those on whom the law fixes a responsibility for support. From an early time, and at least until the enactment of sec. 49.10 (7) in 1935, a lien on the property existed in favor of the state. *Johnson v. Door County,* 158 Wis. 10, 147 N. W. 1011; *Estate of Wickesberg,* 209 Wis. 92, 244 N. W. 561. We are now to consider whether that lien in favor of the state continues or whether in its place there now exists only the status of a preferred creditor. The early statute contained expression to the effect that the property of any insane person kept in any state or county hospital at the state's charge "shall be liable for his support and maintenance and

chargeable for the payment thereof." This statute and its successor also contained the provision that the—

"court may, in his discretion, refuse to render judgment or allow the claim in favor of the claimant in any case where a parent, wife or child is dependent on such property for future support." Sec. 49.10, Stats. 1933, and similar provision in sec. 604*q*, Stats. 1917.

From these observations it appears that the legislature was then conforming its acts to the ancient policy of the common law under which the government, in theory, took charge of the effects of the insane person permitting them first to be used for the maintenance of him and his family, and second for the benefit of his creditors as ordered by a court of competent jurisdiction from time to time. Shelford, Lunatics (2d ed.), ch. II, *passim*. In later reorganizing the statutes, the words used do not so plainly carry the idea of "lien" in favor of the state as they do of a claim only of the standing of a preferred creditor. We illustrate this by quoting sec. 46.10 (7), the statute on which the state's claim of preference, whatever it is, must rest. This section reads, in part:

"The actual *per capita* cost, . . . of maintenance furnished an inmate of any state institution, or any county institution . . . may be recovered by the state board of control, . . . from such person, or from his estate, or may be recovered from the husband or wife, father, children or mother of such person. . . . In all claims of the state board of control . . . upon such relatives for support of an inmate or upon moneys or property held by said inmate or held by some one in his behalf, the state board of control . . . shall be deemed a preferred creditor."

Sub. (8) gives the counsel for the board some measure of discretion and provides that he—

"shall make all reasonable and proper efforts, but shall give due regard in all cases to others who may be lawfully dependent upon such property for support, to recover the cost of maintenance furnished. . . ."

We are of the opinion that the result of this legislation, which vests discretion as to collection solely in the board, is only consistent with the idea of a creditor furnishing goods and services. The court no longer functions as the chancellor doing equity and representing the government, standing as *parens patriæ* in case of insanity, but merely affords remedies available in the debtor-creditor relationship. The judgment as to what extent the payment of the claim is to be insisted upon is now in the agency directed to collect. The county court is not now to judge of the matter between the state and the family of the afflicted person as to their needs or the effect upon them and the community of enforcement of the claim. It occurs to us that the legislature, in making this decided change from the older method, was of the opinion that although the lien in favor of the state had existed where the state also gave the court discretionary judgment over the strict enforcement of the claim where wife and children were involved, yet that when the state board was given the right, in its own discretion, to collect the full amount, it ought to be a preferred creditor without a lien upon property in which dependents of the insane person might have prior rights. That, under the old statutes, was a matter addressed to the sound judgment of the chancellor. While not losing sight of the governmental nature of the activities of the state here involved, the new legislation was to establish more definitely what may be described as a debtor and creditor relationship, and because of this the only advantage the state is to have is that which attaches to the status of a preferred creditor. The statute makes the state a preferred creditor whether it seeks to collect from the estate of the insane person or from his relatives, and it is quite unlikely that any lien could have been intended to apply to the property of the relatives. "Preferred" is a relative word meaning that the thing to which it is attached has some advantage over another thing of the

same character, which but for this advantage would be like the other. 49 C. J. p. 1322. A statute making a person a "preferred creditor" has been held to give no lien. *Seymour v. Berg*, 227 Ill. 411, 81 N. E. 339.

We therefore return the case to the court below for the purpose of permitting the introduction of the *per capita* cost at the institution as evidence of reasonable value and according defendants the opportunity of meeting this evidence by competent rebutting evidence.

The statute does not provide for the taxation of costs against the state, and therefore none can be so taxed. The state has no greater right than can be accorded to a preferred creditor, which means that it shall be among the creditors to be first paid.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.