In re Guardianship of Banski: State Board of Control, Appellant, vs. Banski, imp., Respondent.

*November 11—December 7, 1937.*

362

*Blaine M. Linke,* collection and deportation counsel for the State Board of Control, and *Paul B. Knuese,* assistant collection and deportation counsel, for the appellant.

For the respondent the cause was submitted on the brief of *Joseph L. Gottschlich* of Kenosha.

NELSON, J.   The State Board of Control first contends that the court erred in not adjudging its claim to be a preferred claim which must be paid first out of the incompetent's estate, and that, in any event, so much of its claim as relates to the maintenance of the incompetent, subsequent to August 9, 1935, when ch. 336, Laws of 1935, went into effect, should be allowed as a preferred claim.

So much of said ch. 336 (now sec. 46.10 (7) Stats.), as requires present consideration, is as follows:

"The actual *per capita* cost, as defined by rule of the state board of control, of maintenance furnished an inmate of any state institution, or any county institution in which the state is chargeable with all or a part of the inmate's maintenance, may be recovered by the state board of control. . . . In all claims of the state board of control . . . for support of an inmate or upon moneys or property held by said inmate or held by someone in his behalf, the state board of control . . . shall be deemed a preferred creditor. . . ."

Prior to the enactment of that law the claim of John Banski had fully accrued and was a valid and existing debt.

The claimant, John Banski, contended in the county court, and now contends in support of the judgment entered, that ch. 336, if given a retroactive effect so as to subordinate his claim to that of the board, violates his constitutional rights

guaranteed by sec. 10, art. I, of the constitution of the United States, which provides :

"No state shall . . . pass any . . . law impairing the obligation of contracts. . . ."

The first question for determination therefore is whether ch. 336, which provides that all claims of the board for support of an inmate in any state institution shall be preferred, violates the constitutional rights of one who had a valid claim against the incompetent at the time of its enactment. A consideration of the statutes which were in force prior to the enactment of ch. 336, and which authorized the board to recover from the incompetent or his estate for the maintenance furnished him in a state institution, did not give to any such recovery a preferred status. During the years 1930, 1931, 1932, and 1933, when the claimant, John Banski, furnished board and room to his brother, Frank Banski, pursuant to an express agreement, sec. 49.10, Stats. 1929, 1931, and 1933, so far as here material, provided :

"If any person at the time of receiving any relief, support or maintenance at public charge, under this chapter or as an inmate of any state or municipal institution, or at any time thereafter, is the owner of property, the authorities charged with the care of the poor of the municipality, or the board in charge of the institution, chargeable with such relief, support or maintenance may *sue for and collect* the value of the same against such person and against his estate."

Clearly no preferred status was accorded to a claim of the board by that language which gave to the board the right to "sue for and collect" the value of the support and maintenance furnished an inmate in a state institution. So that at the time the debt due the claimant, John Banski, accrued pursuant to the contract, he had the right to recover the amount thereof, employing any remedy afforded by law.

No case has been called to our attention, and we have found none, in which a court of last resort has determined

the precise question here raised. One court has held that one of its former decisions which overruled a prior decision in which it was held that a deficiency on a mortgage had a secured claim status when filed against an estate did not impair the mortgagee's contract. *McLure v. Melton,* 24 S. C. 559. In another case it was held that a statute which gave to claims of the state a preference over other claims did not impair a debt secured by a chattel mortgage, which had been given before the enactment of such statute. *State v. Dickson,* 38 Ga. 171. Those cases, however, run *contra* to the great weight of authority. Similar questions have often arisen with respect to changes in state insolvency laws regarding priorities and preferences, and generally the courts have held that, where such a law operates to destroy a contract right, it cannot be sustained. In two of our cases where the statute considered did not destroy the contract right but only affected the remedy, it was held that the statutes violated sec. 10, art. I, of the constitution of the United States, because the statute so altered the remedy as to materially impair the value of the contracts. *Peninsular Lead & Color Works v. Union Oil & Paint Co.* 100 Wis. 488, 76 N. W. 359; *Second Ward Savings Bank of Milwaukee v. Schranck,* 97 Wis. 250, 73 N. W. 31.

If a statute which materially affects the remedy alone be unconstitutional, it is clear that a statute which destroys a contract right or materially affects its value should for like reasons be condemned. In *Curran v. State of Arkansas,* 15 How. 304, and *Baring v. Dabney,* 19 Wall. 1, the supreme court of the United States held that state statutes which sought to prefer the states themselves in the distribution of the assets of banks owned by them violated sec. 10, art. I, U. S. Const., in that such statutes clearly impaired the obligation of the contracts of other creditors of the bank whose claims existed at the time of such enactments. In 12 C. J. p. 1075, the holdings of the courts on the question whether

one class of existing debts may be given a preference by the legislature over other existing debts are summarized. After listing a few authorities which in effect hold that the state may regulate priorities as between creditors whose debts were contracted prior to the passage of the statute, it is stated:

"But the weight of authority and reason is in favor of the rule that in its application to prior contracts such a statute or constitutional provision is unconstitutional as impairing their obligation." (*Sun Mut. Ins. Co. v. Board of Liquidation,* 24 Fed. 4; *Harris v. Walker,* 199 Ala. 51, 74 So. 40; *Kimball v. Jenkins,* 11 Fla. 111, 89 Am. Dec. 237; *Atchafalaya R., etc., Co. v. Bean,* 3 Rob. (La.) 414.)

It is, of course, competent for a state to regulate priorities as between creditors whose debts are contracted after the passage of the statute. *Abilene Nat. Bank v. Dolley,* 228 U. S. 1, 33 Sup. Ct. 409.

It is our opinion that ch. 336, if given a retroactive effect, as the board contends should be given it, violates the constitutional rights of the claimant, John Banski, and that the county court was correct in so concluding. This being true, it was proper to adjudge that the moneys belonging to the estate be divided between the claimants on a *pro rata* basis.

It is further argued that under our decisions the board had a lien upon the estate of the incompetent for the support and maintenance furnished him prior to the enactment of ch. 336, and that therefore John Banski's claim was not affected in any material way by ch. 336. The argument runs thus: The board had a lien for the amount of its claim; John Banski had no lien; therefore, John Banski's claim must be considered as subordinate to the claim of the board which had a lien status. The argument would be persuasive if the claim of the board were in fact a lien upon the estate of the incompetent. While there is language in two of our decisions which tends to support the contention that such claim is a

lien, such language did not correctly describe its status. In one of the cases, *Estate of Sletto,* 224 Wis. 178, 183, 272 N. W. 42, 44, it was said:

"From an early time, and at least until the enactment of sec. 46.10 (7) in 1935, a lien on the property existed in favor of the state."

In support of that statement, *Johnson v. Door County,* 158 Wis. 10, 147 N. W. 1011, and *Estate of Wickesberg,* 209 Wis. 92, 244 N. W. 561, were cited. There is nothing in the *Johnson Case* which supports the statement that a lien existed in favor of the state. The holding in that case was that "under sec. 604*q*, Stats., the entire property and estate of an insane ward is made liable for his support and maintenance and chargeable with the payment thereof, and there is no exception in favor of the homestead." It was there clearly held that estates of insane wards were liable for their support and maintenance and chargeable for the payment thereof; and that the remedies provided were for the collection of the debt from their properties. The word "lien" was not mentioned in the opinion. In *Estate of Wickesberg, supra,* it was said (p. 96):

"The legislature . . . has acted within its power, and although not expressly amending the section with relation to homesteads it has by implication added another *lien* and thus modified the rule theretofore existing."

The rule there referred to was the statute exempting homesteads from execution. Denominating the claim of the county in that case as a lien was not justified by the language of sec. 49.25, Stats., which provided:

"On the death of a person who has been assisted under sections 49.21 to 49.39 . . . . the total amount paid together with simple interest at three per cent annually shall be allowed and deducted from the estate of such person . . . . by the court having jurisdiction to settle the estate. . . ."

Going as far back as the Statutes of 1898, we find that sec. 604*q*, provided that:

"The property and estate of any insane person kept in any state . . . hospital . . . shall be liable for his support and maintenance and chargeable for the payment thereof, . . . the state board of control . . . may apply to the proper county judge to compel such payment."

By ch. 345, Laws of 1919, sec. 604*q* was repealed and sec. 49.10 enacted. That section provided that, "if any person who has received any relief, support, or maintenance at public charge, under this chapter or as an inmate of any state or municipal institution, was at the time of receiving such relief, support, or maintenance the owner of property, . . . the board in charge of the institution . . . may sue for and collect the value of the same against such person and against his estate." Under that section it was held that no recovery could be had against an inmate or his estate unless he was the owner of property at the time of receiving such relief. *Guardianship of Decker,* 181 Wis. 484, 195 N. W. 316; *Guardianship of Angle,* 183 Wis. 648, 198 N. W. 851. By ch. 118, Laws of 1925, sec. 49.10 was amended so as to permit the authorities charged with the care of the poor of a municipality, or the board in charge of a state or municipal institution, to sue for and collect the value of such relief, support, or maintenance, regardless of when the property of the inmate was acquired. A consideration of all of these statutes impels the conclusion that the legislature did not intend to give to a municipality or to the board a lien, as that word is ordinarily understood, upon the estate of an inmate who had been supported or maintained in a state institution. We conclude that the contention of the board that it had a lien upon the property of the incompetent is not sound.

The court, however, further adjudged "that upon making payment of said sums to said claimants, and filing receipts

therefor said guardian be and hereby is released and discharged of and from any and all liability herein." That language is broader than is warranted. When the claims were allowed in county court they became judgments against the incompetent. There can, of course, be no liability on the part of his guardian to pay to the claimants moneys in excess of those in its hands belonging to the incompetent. But the incompetent is still living and, should he acquire by inheritance or otherwise an estate in the future, such after-acquired estate can be subjected to the payment of the unpaid balances of the judgments entered on the claims. The proceedings before the county judge were guardianship proceedings, not insolvency proceedings. A part payment of the claims as allowed will therefore not discharge the judgments. The judgment entered should be modified so as to clear up any ambiguity therein and so as to provide that the payment of the *pro rata* shares of the money in the hands of the guardian to the respective claimants may not be construed as full payment of the respective claims.

*By the Court.*—The judgment of the court in so far as it provides for a *pro rata* distribution of the incompetent's funds in the hands of the guardian between John Banski and State Board of Control is affirmed. The judgment is reversed in so far as it provides that such *pro rata* payment to the claimants shall operate as a full payment and release of the claims.