149 Wis.2d 548 (1989)
439 N.W.2d 829
IN RE the PATERNITY OF M.A.V.: STATE of Wisconsin, Petitioner-Respondent,
v.
J.L.T., Jr., Respondent-Appellant.[]
No. 88-1006.
Court of Appeals of Wisconsin.
Orally argued December 15, 1988.
Decided March 7, 1989.
*549 For respondent-appellant there were briefs and oral argument by Kirk J. Foley of Korpela & Foley Law Office, of Hurley.
For petitioner-respondent there was a brief and oral argument by David Vernon Penn, District Attorney/Corporation Counsel, Vilas County.
Before Cane, P.J., LaRocque and Myse, JJ.
LaROCQUE, J.
J.L.T., Jr., appeals a judgment of paternity entered pursuant to a directed verdict. The dispositive issue is whether any credible evidence at trial supported the jury finding that J.L.T. was not the father of M.A.V. Despite the jury finding, the trial court directed a verdict in favor of the petitioner, State of Wisconsin. Because the mother's essentially unchallenged testimony, coupled with the rebuttable but unrebutted presumption that accompanied blood test results left no issue of fact for the jury, we affirm.
Although the directed verdict issue is dispositive, an erroneous procedural ruling on evidence at trial requires comment. Contrary to fact, the child's mother testified that she had sexual intercourse only with J.L.T. The trial court ruled, over J.L.T.'s objection, that despite the mother's pretrial testimony that she had sexual intercourse with four males during the sixty-day conception period, because all but J.L.T. were excluded by blood test, she could testify on direct examination that she had intercourse only with J.L.T. This ruling *550 was based on the language of sec. 767.48(4), Stats., which provides in part:
Whenever the results of the [blood] tests exclude any male witness from possible paternity, the tests shall be conclusive evidence of nonpaternity of the male witness. Testimony relating to sexual intercourse or possible sexual intercourse of the mother with any person excluded as a possible father, as a result of a blood test, is inadmissible as evidence.
Because the jury decided in favor of J.L.T., the error was undisputedly harmless. Nevertheless, the integrity of the judicial process is compromised when a witness under oath is authorized, even instructed, to give answers that are untruthful. Ironically, the procedure proposed by the district attorney and used here may explain the jury's unfavorable verdict. At trial, the mother conceded that she had previously "acknowledged that there were other persons that possibly could have been the father of the child ...." Her acknowledgment was admittedly given at a time prior to blood tests. Thus, because the mother was asked about and denied intercourse with others, the jury was justifiably skeptical in view of her enigmatic reference to "other persons."
Although the paternity statutes raise many unanswered questions, they cannot be construed in a fashion that condones deception. Given the irrelevance of intercourse with males excluded by testing, the district attorney was restricted to inquiry about persons not eliminated.[1] While the petitioner's case would be *551 strengthened if the mother could testify to intimacy with no one but the respondent, that advantage was lost here as a consequence of the mother's conduct. The statute presents an evidentiary shield that defends the mother against certain irrelevant testimony. It does not follow, however, that she can use the statute as a sword, stating as fact something that is simply untrue. Ordinarily, this deception would require a new trial. Because the jury verdict renders the error harmless, however, we proceed to the issue of the directed verdict.
M.A.V., born April 6, 1986, was conceived in the summer of 1985 when her mother was fifteen and J.L.T. was thirteen. Because the child weighed more than five and one-half pounds at birth, the circuit court took judicial notice that M.A.V. was conceived between June 9, 1985, and August 8, 1985. See sec. 891.395, Stats. At a pretrial hearing, the mother testified that J.L.T. was one of four persons with whom she had sexual intercourse during the sixty-day conception period. All but J.L.T. were eliminated by HLA blood tests. Although defense counsel during pretrial proceedings suggested "at least one other potential father" and postponement for a blood test was granted, it appears that no test was taken. The person named by counsel was not called as a witness, and the mother at trial denied intercourse with that person and another as well. No attempt was made to impeach her testimony or to demonstrate any basis for the inquiry. J.L.T. testified briefly, admitting to intercourse with the mother after he finished the seventh grade on May 31, "during the summer of 1985." J.L.T.'s blood test was received as evidence.[2] J.L.T. *552 does not challenge the validity or admissibility of the test, which included a finding that it was 99.08% probable that he was the father.
[1, 2]
A motion to grant a directed verdict is improper if any credible evidence, viewed reasonably, supports a verdict in favor of the party against whom the motion is brought. Hale v. Stoughton Hosp. Ass'n, 126 Wis. 2d 267, 276, 376 N.W.2d 89, 94 (Ct. App. 1985). In deciding the motion, the evidence is viewed most favorably toward the party against whom it is brought. Village of Menomonee Falls v. Michelson, 104 Wis. 2d 137, 154, 311 N.W.2d 658, 666 (Ct. App. 1981).
[3]
Where the defense fails to establish the invalidity or unreliability of blood tests, they may be received in evidence without further foundation. T.A.T. v. R.A.B., 144 Wis. 2d 638, 654, 425 N.W.2d 404, 411 (1988); see also sec. 767.48(1)(b), Stats. (admitting the blood tests without expert testimony upon proper notice). Section 767.48(1m) provides:
Under [the HLA test procedure], if the blood tests show that the alleged father is not excluded and that the statistical probability of the alleged father's parentage is 99.0% or higher, the alleged father shall be rebuttably presumed to be the child's parent.
Subsection (1m), an evidentiary presumption, was adopted after commencement of this action but before trial and was applicable at the trial.[3] "It is a well-established rule of law that the Legislature may change *553 rules of evidence, even though such change affects pending actions." State ex. rel. Sowle v. Brittich, 7 Wis. 2d 353, 360, 96 N.W.2d 337, 341 (1959) (quoting Wilhelm v. Order of Columbian Knights, 149 Wis. 585, 589, 136 N.W. 160, 162 (1912)). The alleged father in a paternity action has no vested right in a repealed evidentiary statute that may have been more favorable. Sowle, 7 Wis. 2d at 360, 96 N.W.2d at 341.
The evidentiary effect of a presumption is governed by sec. 903.01, Stats.:
Except as provided by statute, a presumption recognized at common law or created by statute, including statutory provisions that certain basic facts are prima facie evidence of other facts, imposes on the party relying on the presumption the burden of proving the basic facts, but once the basic facts are found to exist the presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.
This statute "effectuates a major change in Wisconsin law." Judicial Council Committee's Note1974, reprinted in Wis. Stat. Ann., sec. 903.01 (West 1975). Following the adoption of this provision of the evidence code, it no longer matters whether a presumption is based on logic and reasonable inferences or upon a policy objective; in either case, upon proof of the "basic facts," the statute now shifts both the evidentiary burden of production and the burden of persuasion to the party against whom the presumption is directed.[4] *554 The basic facts here are set forth in sec. 767.48(1m): "that the alleged father is not excluded and that the statistical probability of the alleged father's parcentage is 99.0% or higher...." These facts are undisputed in this case.
[4]
The stark record produced here makes it unnecessary to answer the question that will inevitably arise: Does proof of intercourse with one or more untested males overcome the presumption and present a legitimate jury issue on paternity?[5] The question does not arise here because J.L.T., bearing the burden, failed, either directly or by inference, to offer proof of such intercourse. The only witnesses at trial were the mother and J.L.T. Neither gave any testimony that would support a finding that intercourse with uneliminated males occurred. The mother denied having sexual relations with two named persons (neither was among the three eliminated by test). Surely the mere inquiry about others, without more, raises no reasonable inference from which a jury could conclude the necessary facts to support a defense verdict. There remains the contention that a directed verdict is inappropriate because a jury can always draw upon their common experience and reach conclusions unfavorable to a witness'credibility.This contention,absent the additional weight of a presumption, would require serious consideration. Chief Justice Arthur Vanderbilt of the *555 New Jersey Supreme Court is the author of a leading case on the issue. In Ferdinand v. Agricultural Ins. Co., 126 A.2d 323 (N.J. 1956), he wrote:
The right of a party to have his uncontradicted testimony given conclusive effect has been the subject of no small consideration by the courts of this country.... It has also been the subject of no small amount of confusion in the law....
The great number of cases ... incline to the more flexible view expressed by us here, that where the uncontradicted testimony of a witness, interested or otherwise, is unaffected by any conflicting inferences to be drawn from it and is not improbable, extraordinary or surprising in its nature, or there is no other ground for hesitating to accept it as the truth, there is no reason for denying the verdict dictated by such evidence....
Id. at 331-32 (citations omitted).
The sound view seems to us to be this: That each case must depend upon its own facts, and that the mere fact of interest in the controversy does not, in and of itself, and apart from other circumstances appearing in the case, render it a reasonable thing to disbelieve the testimony of a witness whom otherwise it would be unreasonable to disbelieve, and this, we think, is the established practice of the great majority of courts.
Id. at 331 (quoting Jerke v. Delmont State Bank, 223 N.W. 585, 591 (N.J. 1929)).
In a paternity case, if the only evidence at trial were the uncontradicted testimony of the mother, a close and difficult directed verdict issue may arise. Similarly, if the evidence included the blood test presumption but there was sufficient evidence of sexual *556 intercourse with an untested person, a directed verdict may be inappropriate.[6] Neither case is presented here. The test presumption, coupled with the mother's testimony, is offset only by the weak and indirect attack on her credibility arising from her use of drugs and alcohol. If the shifting burden of proof imposed by sec. 903.01 is to have effect, more was required to avoid the directed verdict.
By the Court.Judgment affirmed.
NOTES
[] Petition to review dismissed.
[1] One of the anomalies of the paternity statutes is the discretionary authorization for the mother to offer testimony concerning sexual relations with others outside the conception period. Sec. 767.47(2), Stats. No attempt was made in this case to offer testimony on that subject.
[2] The tests eliminating the three other participants were also received outside the presence or knowledge of the jury.
[3] Section 767.48(1m) was created by 1987 Wis. Act 27, sec. 2137s. Section 3203(24)(em) of the same Act provides that the newly created section shall "first apply to paternity actions commenced on the first day [Oct. 1, 1987] of the 3rd month beginning after publication."
[4] Prior to sec. 903.01, Wisconsin had already shifted away from the "bursting bubble" theory of presumptions. See Schlichting v. Schlichting, 15 Wis. 2d 147, 112 N.W.2d 149 (1961). Until the adoption of this provision of the code of evidence in 1974, however, the burden of persuasion remained with the proponent of the presumption.
[5] The inadmissibility of testimony relating to sexual intercourse with excluded males by virtue of sec. 767.48(4) eliminates the use of that conduct as a factor bearing on the mother's credibility.
[6] Prior to the statutory presumption based upon the sophisticated determinations of HLA testing, it was essential to a prima facie paternity case that the mother establish that she had sexual relations only with the accused (unless the others were eliminated by blood test). See State ex rel. Skowronski v. Mjelde, 112 Wis. 2d 110, 115, 332 N.W.2d 289, 291 (1983) (citing Holz, The Trial of a Paternity Case, 50 Marq. L. Rev. 450, 460 (1967)).